## In re Eddie Bolton THORNE, Debtor.

### Bankruptcy No. 1–82–01007.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 9, 1983.

David P. Hawley, Chattanooga, Tenn., for debtor.

Walter E. Hooper, Chattanooga, Tenn., for creditor, Collateral Inv. Co.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This case is before the court on the debtor's objection to the claims of Collateral Investment Company (CIC) and its objection to confirmation of the debtor's chapter 13 plan. The court conditionally confirmed the plan subject to a decision of these disputes.

CIC's debt is secured only by a mortgage on real property that is the debtor's principal residence. The debtor was behind on his mortgage payments at the time of his bankruptcy. In his chapter 13 plan the debtor proposed to cure the default by paying the amount in arrears.

CIC objected to confirmation on the grounds that the arrearage was more than the amount provided for by the plan and that the plan failed to provide for interest on the arrearage.

The debtor objected to CIC's arrearage claim on the ground that it included $150.00 in attorney's fees for representation in this case, which can be included only if specially allowed by the court.

The debtor objected to CIC's arrearage claim and its primary claim under the mortgage on the ground that both included a charge of $144.10 for "escrow advances". The charge is no longer included in both claims since CIC amended its arrearage

claim to delete the charge. To that extent the objection is moot.

The debtor objected to the "escrow advance" charge on another ground. According to the debtor, the payments into escrow were included in the regular monthly payments and any escrow advances would be included in the sum of the defaulted payments. The result is that CIC's arrearage claim should now be correct since the charge for escrow advances was deleted.

However, CIC's primary claim also says that it includes escrow advances. The court takes it that these escrow advances have nothing to do with the defaulted payments and do not make the primary claim incorrect. The logical explanation is that CIC must make some payments for insurance and the like before the total is collected from the regular monthly payments. Saying that the claim included escrow advances at the time of bankruptcy should not increase the primary claim. Continuation of the regular monthly payments will pay the escrow advances. The plan proposes to continue the regular monthly payments.

Only two questions remain: (1) whether CIC is entitled to interest on its arrearage claim and (2) whether CIC is entitled to collect, as part of the arrearage claim, an attorney's fee for representation in this case.

The second question was essentially answered in *In re Simpkins,* 16 B.R. 956, 6 C.B.C.2d 1081 (Bkrtcy.E.D.Tenn.1982). The court decided that the creditor is entitled to add attorney's fees to its claim to the extent allowed by its agreements with the debtor. In this case, the promissory note and mortgage (deed of trust) provide:

> In the event of default in the payment of this note, and if the note is collected by an attorney at law, the undersigned agree(s) to pay all costs of collections, including a reasonable attorney's fee.
> [If CIC] shall become a party to any [court proceedings] in reference to its interest in the premises . . . the reasonable costs, charges and attorney's fees . . . shall be added to the principal sum . . . secured by this instrument.

Both of these provisions leave doubt as to whether CIC is entitled to the attorney's fee for representation in this proceeding. The provision of the promissory note allows an attorney's fee only if the note is collected. The deed of trust allows an attorney's fee only if the legal proceedings concern its interest in the real property. In a broad sense, this proceeding concerns CIC's interest in the real property, and the deed of trust entitles it to an attorney's fee for this proceeding. The amount charged appears to be reasonable.

The difficult question is whether CIC is entitled to interest on its arrearage claim, and if so, whether it is entitled to interest on the entire amount or only part. CIC itemized its arrearage claim as follows:

| | | |
|---|---|---|
| 6 missed payments at $273.41 = | | $1,640.46 |
| 6 late charges at $10.94 | | 65.64 |
| | | $1,706.10 |
| Expenses of foreclosure commenced before bankruptcy | | |
| Advertising | $ 72.60 | |
| Attorney's fee | 150.00 | |
| | TOTAL | $ 222.60 |
| Attorney's Fee (this proceeding) | | $ 150.00 |
| | TOTAL | $2,078.70 |

The promissory note provides for interest at 10% per year on the unpaid principal of the debt. The unpaid principal includes the principal portions of the defaulted payments. The deed of trust also makes the attorney's fees part of the unpaid principal. The late charges and advertising costs are not made part of the unpaid principal. The agreements do not provide for interest on the interest portions of the defaulted payments. Thus, if CIC is held strictly to its contracts, it is entitled to interest only on part of its arrearage claim.

In *In re Simpkins* the court attempted to explain how payment must be made on a claim secured only by a security interest in the debtor's principal residence. Generally the claim will have two parts—an arrearage claim resulting from the debtor's default in payments and the main claim for the balance due on the mortgage. Since the creditor's rights cannot be modified,

there is only one way to treat the main part of the claim. The debtor must make the regular payments as called for by the contract. There may be some slight modifications, such as disregard of late charges if the trustee makes the payments after the monthly due dates. However, the cram-down statute clearly does not apply. 11 U.S.C. § 1325(a)(5)(B) (the "cram-down" statute).

■ The prohibition on modifying the creditor's rights also means that the creditor must be paid interest on the arrearage to the extent called for by the contract. Should the creditor be allowed interest on the entire arrearage claim even though the contract does not call for it?

At first the statute appears to limit the creditor to its contract rights. On the other hand, cure of a default involves modification of the creditor's rights. See *In re Taddeo,* 685 F.2d 24, 9 B.C.D. 557, 6 C.B. C.2d 1201 (2d Cir.1982). Thus, it can be argued that the statutory prohibition on modifying the creditor's rights is irrelevant and the court should rely on general provisions, particularly the cram-down statute.

■ Under the cram-down statute, the court determines the amount of the creditor's "allowed secured claim" according to the value of the collateral. The plan must provide for interest on the allowed secured claim at a rate that will make the total paid over time equal to the "present value" of the allowed secured claim. The contract does not control. The court sets the interest rate according to prevailing market rates.

One court required interest on an entire arrearage claim on the basis of the cram-down statute. The creditor agreed to interest at the contract rate. The court hinted that it would have set a higher rate according to the cram-down standard if the creditor had not agreed. The court did not state whether the entire arrearage claim was allowed as secured. *In re Gregory,* 8 B.R. 256, 7 B.C.D. 230 (Bkrtcy.S.D.N.Y.1981).

In another case, the court held that interest should be allowed on the entire arrear-age claim but limited the interest to the contract rate. The court relied on the cram-down statute but concluded that the prohibition on modifying the creditor's rights made the contract control the interest rate. The court said that the creditor's rights could neither be decreased nor increased. *In re Stratton,* 30 B.R. 44, 10 B.C.D. 726 (Bkrtcy.W.D.Mich.1983). This is essentially a compromise solution.

For example, suppose that the entire arrearage claim can be allowed as secured. The creditor can argue that its rights will be modified if it is paid less than the present value of the arrearage claim. The present value rule is based on creditor's right to foreclose and receive full payment of its allowed secured claim immediately. Since the chapter 13 stopped foreclosure on the basis of the default that gave rise to the arrearage claim, it seems fair to require payment of the present value of the claim.

Under the present value rule, the creditor would be paid interest on the entire arrearage claim, even if not required by the contract, and the interest rate set by the court might be higher than the contract rate.

The creditor's contract rights would be modified, but it might receive more favorable treatment than it would under the contract. This approach seems too favorable, however, since the statute also prevents the creditor from being treated less favorable than the contract requires, even if less favorable treatment would satisfy the cram-down statute. The creditor would have the best of both statutes.

The court is also concerned with simplicity of operation in chapter 13 cases. Arrearage claims secured only by a debtor's principal residence are unique under the chapter 13 statutes. The statutes do not provide a clear answer to how such claims must be paid. Judge Howard's approach in the *Stratton* case attempts to reconcile the statutes. It may be as fair and workable a solution as can be found.

■ The court concludes that CIC's arrearage claim should be allowed for the full amount of the amended claim and that in-

terest should be paid on the allowed claim at the contract rate of 10% per annum.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.