771 F.2d 119
 13 Collier Bankr.Cas.2d 575, 13 Bankr.Ct.Dec. 678
 In re Harold E. COLEGROVE, Delores A. Colegrove, Debtors.
CARDINAL FEDERAL SAVINGS & LOAN ASSOCIATION, Creditor-Appellant,
v.
Harold E. COLEGROVE; and Delores A. Colegrove, Debtors-Appellees.
 No. 84-3557.
 United States Court of Appeals,
Sixth Circuit.
 Cause Argued June 7, 1985.
Decided Aug. 22, 1985.
 
 Kirk Sampson argued, Lerner, Sampson & Rothfuss Co., L.P.A., Cincinnati, Ohio, for creditor-appellant.
 Wayne F. Wilke, Robert A. Goering argued, Cincinnati, Ohio, for debtors-appellees.
 Before MERRITT and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 On September 8, 1983, Harold E. Colegrove and Delores Ann Colegrove, the debtors, filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Immediately prior to the filing, Cardinal Federal Savings and Loan Association ("Cardinal") instituted a foreclosure action in state court against the Colegroves' personal residence. Cardinal held the first mortgage on this realty and sought foreclosure because of the Colegroves' delinquency in making payments.
 
 
 2
 Under the Chapter 13 plan submitted by the Colegroves, they were to make up the arrearage owed Cardinal on the first mortgage indebtedness while at the same time continuing to pay the monthly installments due under the mortgage during the term of the plan. On October 3, 1983, Cardinal filed with the bankruptcy court a proof of claim and an application for interest on what it presented as a secured claim. Cardinal claimed an arrearage of $2,495.60. In December this was later modified to reflect all missed payments through November 1983, the new total arrearage being $2,967.60.
 
 
 3
 On November 30, 1983, the bankruptcy court confirmed the Colegroves' proposed plan, despite its failure to provide for interest on the arrearage. The bankruptcy court rejected Cardinal's application, finding Cardinal lacked any statutory or contractual right to interest, and this judgment was affirmed by the district court.
 
 
 4
 We are called upon to decide whether the bankruptcy court erred in confirming the Colegroves' proposed plan without any provision for interest on the arrearage. We find little direct precedent on this question which must arise with some frequency in the bankruptcy context. We believe several sections of the Bankruptcy code bear upon the answer to be reached.
 
 
 5
 Section 1322 of the Code prescribes the contents of a Chapter 13 plan, providing in part that
 
 
 6
 The plan may--
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim on which the last payment is due after the date on which the final payment under the plan is due;
 
 
 13
 11 U.S.C. Sec. 1322(b). The bankruptcy court relied on this section of the Code in rejecting Cardinal's application for interest. It reasoned that because a plan could not modify the terms of the mortgage, the mortgagee could not receive interest on the arrearage absent a specific clause in the loan agreement to the contrary. It then concluded that to require the payment of interest would be to modify the mortgage contrary to Section 1322.
 
 
 14
 Cardinal, on the other hand, argues that two other sections of the Bankruptcy Code dictate a contrary result. Section 506(b) states:
 
 
 15
 To the extent that an allowed secured claim is secured by property the value of which, ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.
 
 Section 1325(a) provides in part:
 
 16
 The court shall confirm a plan if--
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 (5) with respect to each allowed secured claim provided for by the plan--
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 
 
 23
 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan of such claim is not less than the allowed amount of such claim;[1]
 
 
 24
 Cardinal argues that section 506(b) specifically provides that it be allowed interest. Here the Colegrove residence property securing the claim is valued at $55,000, much more than Cardinal's claim, and reflecting that the Colegroves have a substantial equity in their home. In the alternative, Cardinal urges that the "cram down" provision of section 1325 requires that interest be allowed. Cardinal's rationale is that in order to receive the true value of the arrearage, there must be interest paid over the period of repayment.
 
 
 25
 This court has twice had occasion to consider the meaning of section 1325. In Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982), section 1325 was interpreted to require payment of interest at the current market rate on an arrearage due under an automobile loan agreement. More recently, in Hardy v. Cinco Federal Credit Union (In re Hardy), 755 F.2d 75 (6th Cir.1985), the court affirmed the bankruptcy court's order denying confirmation of a Chapter 13 plan because of its failure to include interest on the amount due Cinco Federal Credit Union, an unsecured creditor. The court interpreted 11 U.S.C. Sec. 125(a)(4)[2] to require interest on all deferred payments to be made under the plan. In our view, a contrary conclusion would prevent the creditor from realizing the full present value of the amount owed.
 
 
 26
 The bankruptcy court concluded that neither section 506(b) nor section 1325(a)(5)(B) controlled the present case. We disagree with that rationale and conclusion. First, section 1322(b)(2) prevents a modification of the loan agreement only under certain conditions, while section 1322(b)(5) allows for a "cure" of the arrearage "notwithstanding paragraph (2)." By ordering that interest be paid on the arrearage, there is no modification of the loan agreement. Instead, the interest requirement is merely incident to the "cure," which is excepted from the rule of section 1322(b)(2). Accord In re Taddeo, 685 F.2d 24, 27-28 (2d Cir.1982).
 
 
 27
 Second, both sections 506(b) and 1325(a) indicate that interest is allowable. The former provides for interest on all allowed secured claims where the value of the security is greater than the claim. The latter directs the bankruptcy court to confirm a plan only where the creditor will receive the present value of the amount due him. In Hardy we held that an unsecured creditor was entitled to interest under section 1325. It would be anomalous to hold that an unsecured creditor should receive interest, while a secured creditor, such as Cardinal, should not.[3] Section 1322 was not intended to have this effect.
 
 
 28
 The majority of bankruptcy courts to address the issue have held in favor of allowing interest in this context. In re Stratton, 30 B.R. 44, 46 (Bankr.W.D.Mich.1983) ("interest is required here under Sec. 1325(a)(5)(B) of the Bankruptcy Code to give the creditor the present value of his money"); In re Einspahr, 30 B.R. 356 (Bankr.E.D.Pa.1983) ("the courts agree that, in order to provide the secured creditor with the value of his secured claim 'as of the effective date of the plan,' the debtor must pay interest on that claim"); In re Hibbert, 14 B.R. 891, 894 (Bankr.E.D.N.Y.1981) ("for the Debtors to cure their default, they must presently tender the full amount due; or, in the alternative, tender a greater amount in deferred payments such that the total of such deferred payments is equivalent to receipt of [the total amount due] today"); see also In re Evans, 20 B.R. 175 (Bankr.E.D.Pa.1982); In re Frey, 34 B.R. 607 (Bankr.M.D.Pa.1983).
 
 
 29
 Essentially only one court is supportive of the bankruptcy and district courts' decisions here. In re Carr, 32 B.R. 343, 345 (Bankr.N.D.Ga.1983). That court held that "the awarding of interest pursuant to Sec. 1325(a)(5)(B)(ii) would constitute modification of the contract in contradiction to Sec. 1322(b)(2)," and ruled that in the absence of a specific provision in the loan agreement for interest on all missed installments was impermissible under a Chapter 13 plan. That same court reiterated its position in In re Christian, 35 B.R. 229, 232 (Bankr.N.D.Ga.1983) ("In effect, Sec. 1322(b)(2) operates as an exception to the 'cram down' provisions of Sec. 1325(a)(5)(B)"). We reject this rationale in refusing to allow interest for the reasons we have stated.
 
 
 30
 This court discussed, by analogy, this problem in a Chapter 13 context in Memphis Bank & Trust, the difference being the treatment of both a secured and an unsecured claim in a plan concerning an automobile loan instead of a residence mortgage note. Contract monthly installment payments were required in the approved plan, and this court also allowed the "current market rate" of interest on the creditor's claim (including the excess over the then present value of the automobile as collateral). The court interpreted the applicable statutory Chapter 13 provisions to mean that the creditor in such situation was "making a new loan to the debtor in the amount of the current value of the collateral," 692 F.2d at 431, and such creditor was entitled to interest at the "current market value for similar loans at the time." Id. The effect of such a procedure, allowing interest, according to Memphis Bank & Trust, was "to require full payment in accordance with the contract," id. at 432, not excluding interest.
 
 
 31
 We next consider what rate of interest should be allowed. This question has created a split of authority. One view is to limit the interest to the legal rate. See, e.g., In re Marx, 11 B.R. 819 (Bankr.S.D.Ohio 1981). Other courts have looked to the rates prevailing in the market place. See, e.g., Hibbert, 14 B.R. at 894. Finally, the most widely accepted approach has been to limit the creditor to the rate provided for in the original loan agreement.
 
 
 32
 This last view has been rationalized by the fact that "the contract rate is the rate which the parties agreed was a fair return to the creditor for the debtor's repayment of the loan over an extended period of time." Evans, 20 B.R. at 177. Still other courts have viewed the contract rate to be more favorable because the fixing of any other limit might be construed as an impermissible modification of the loan agreement. See Stratton, 30 B.R. at 45-46; Einspahr, 30 B.R. at 356; Frey, 34 B.R. at 611, In re Simpkins, 16 B.R. 956 (Bankr.E.D.Tenn.1982). Finally, one court has stated that the need for "simplicity of operation in Chapter 13 cases," indicates that the contract rate is a better choice. In re Thorne, 34 B.R. 428, 431 (Bankr.E.D.Tenn.1983). "It may be as fair and workable a solution as can be found." Id.
 
 
 33
 We conclude that the most equitable rate to establish in this type of situation is the prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditors claim and the confirmation of the plan in bankruptcy with a maximum limitation on such rate to be the underlying contract rate of interest.[4] See Memphis Bank & Trust, supra. We accordingly REVERSE and REMAND this matter for further proceedings consistent with the views herein expressed.
 
 
 34
 CELEBREZZE, Senior Circuit Judge, dissenting.
 
 
 35
 I agree with the majority that the issue before this Court is whether Cardinal Federal Savings & Loan Association (Cardinal) is entitled to interest on the arrearage. However, since I believe that the majority's conclusion that Cardinal is entitled to interest on the arrearage contravenes the mandate of 11 U.S.C.A. Sec. 1322(b)(2) (West Supp.1985), I respectfully dissent.
 
 
 36
 The majority makes two arguments in support of its holding that Cardinal is entitled to interest on the arrearage. Initially, the majority contends that the interest payments are part of "curing [the] default" under 11 U.S.C. Sec. 1322(b)(5) (1982). Next, the majority analogizes Cardinal's claim to the treatment of secured and unsecured claims under 11 U.S.C. Secs. 506(b) & 1325 (1982). I will discuss each argument in turn.
 
 
 37
 Under 11 U.S.C. Sec. 1322(b)(2) (West Supp.1985), a plan may not modify the rights of a person holding a security interest in real property which is the debtor's principal residence. Section 1322(b)(5), 11 U.S.C. Sec. 1322(b)(5) (1982), provides an exception to Section 1322(b)(2): a plan may allow for the "curing" of a default within a reasonable time. According to the majority, the allowing of interest on the arrearage is part and parcel of curing the default. I disagree.
 
 
 38
 I believe that the contract between the parties determines what constitutes curing a default for purposes of Section 1322(b)(5). If the parties intend to allow interest on arrearage, a provision to this effect must be included in the contract. In re Carr, 32 Br. 343, 345-46 (Bkrtcy.N.D.Ga.1983); In re Christian, 35 Br. 229, 232 (Bkrtcy.N.D.Ga.1983); see In re Simpkins, 16 Br. 956, 964 (Bkrtcy.E.D.Tenn.1982) ("The main point of the special protection of Sec. 1322(b)(2) is to preserve the right to the regular payments as provided in the contract."). In my view, to automatically allow interest upon arrearage under the aegis of curing the default, as the majority does, clearly modifies the contract between the creditor and debtor in contravention of Section 1322(b)(2). If the parties fail to include a provision governing arrearage in the contract, as in this case,[1] or include a provision requiring only a nominal penalty charge for late payment, interest on the arrearage may be a windfall to the creditor. For example, under the majority's opinion, even if the mortgage contract explicitly provided for a four percent interest rate to accrue on arrearage, the creditor under Section 1322(b)(5) would still be entitled to receive the lesser of the prevailing market or the mortgage interest rate. Thus, assuming that the market and the mortgage rate of interest exceed four percent, a creditor may be placed in a better position by virtue of the majority's interpretation of Section 1322(b)(5) than his position under the contract.[2] I do not believe that Congress intended such a result in enacting Section 1322(b)(5). See In re Clark, 738 F.2d 869, 872 (7th Cir.1984) ("[T]he plain meaning of 'cure,' as used in Sec. 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the status quo ante."). Moreover, the majority partially undermines its opinion by limiting the interest on arrearage to the maximum amount provided for in the contract; if receiving interest is part of curing the default, then the mortgage rate of interest should not affect the interest rate which the creditor receives on arrearage. In other words, if the contract is irrelevant to determining whether a default has been cured, I fail to understand why the contract should still limit the recoverable interest on arrearage. Based upon the foregoing, I believe that the majority's interpretation of Section 1322(b)(5) is contrary to Section 1322(b)(2)'s mandate not to alter the partys' contractual rights.
 
 
 39
 Second, the majority analogizes Cardinal's claim to the treatment of claims under 11 U.S.C. Secs. 506(b) & 1325 (1982). The majority notes that secured claims under Section 506(b) are entitled to interest and that both secured and unsecured creditors receive interest under Section 1325. See Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982) (discussing interest on claims under Section 1325(a)(5)(B)); Hardy v. Cinco Federal Credit Union (In re Hardy), 755 F.2d 75 (6th Cir.1985) (discussing interest on claims under Section 1325(a)(4)). These analogies, however, simply miss the point. Cardinal does not have a secured or unsecured claim; rather, Cardinal has a security interest in the Colegrove's principal residence which is governed by Sections 1322(b)(2) & (b)(5). Accord H.R.Rep. No. 595, 95th Cong., 2d Sess. 429, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6384 ("Paragraph (5) concerns long-term debt, such as mortgage debt."); 124 Cong.Rec. H11089 (daily ed. September 28, 1978) (statement of Rep. Edwards), reprinted in 1978 U.S. Code Cong. & Ad.News 6436, 6481. ("Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated with under Section 1322(b)(5) of the House amendment."); 124 Cong.Rec. S17406 (daily ed. October 6, 1978) (statement of Sen. DeConcini), reprinted in 1978 U.S.Code Cong. & Ad.News 6505, 6550 ("Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor's principal residence. It is intended that a claim secured by the debtor's principal residence may be treated with under Section 1322(b)(5) of the House amendment."). Congress in enacting Sections 1322(b)(2) & (b)(5) intended to treat security interests in principal residences different from all other claims. See Grubbs v. Houston First American Savings Association, 730 F.2d 236, 245 (5th Cir.1984) (en banc) (primary purpose of Section 1322(b)(5) to enable a debtor to preserve the equity in his home and to restore and maintain his currency on long-term debt); In re Simpkins, 16 Br. 956, 963 (Bkrtcy.E.D.Tenn.1982) (purpose of Sections 1322(b)(2) & (b)(5) to allow debtors to make regular payments on mortgages and to protect long-term lenders); United Companies Financial Corp. v. Brantley, 6 Br. 178, 189 (Bkrtcy.N.D.Fla.1980) (purpose of Section 1322(b)(2) to provide stability in long-term home financing industry). Thus, Cardinal's claim cannot be deemed analogous to a secured or unsecured claim; Congress has placed such claims in their own sui generis category. Accordingly, the attempt of the majority to rely upon Sections 506(b) and 1325 is both inappropriate and unpersuasive.
 
 
 40
 The crux of the majority's decision is that the allowing of interest on arrearage is necessary to allow the creditor to realize "the full present value of the amount owed." As a matter of economics, the majority's assertion may be correct. Nonetheless, I believe that Congress in enacting Sections 1322(b)(2) and 1322(b)(5) expressed its intention to allow the contract between the parties to govern matters such as the interest, if any, to be paid on arrearage. Accordingly, since the imposition of interest upon the arrearage is contrary to the contract in this case, I would affirm the judgment of the district court.
 
 
 
 [1]
 This section has since been amended to reflect that the court may not approve a plan where the value of the property to be distributed is less than that of the claim. 11 U.S.C. Sec. 1325(b)(1)(A)
 
 
 [2]
 This section applies to unsecured creditors and appears analogous to 11 U.S.C. Sec. 1325(a)(5)(B)
 
 
 [3]
 The dissent suggests that Cardinal is being placed in a better position by our allowing the recovery of interest on the arrearage. By allowing the recovery of interest, however, we are merely permitting the creditor to achieve substantially the benefit of its bargain. We fail to see any real distinction under these circumstances between a secured claim and a security interest. A party with a security interest in real estate possesses a secured claim. See Black's Law Dictionary 1215 (5th ed. 1979)
 
 
 [4]
 By limiting the interest rate to that found in the contract, we have struck a fair compromise between what has been agreed on by the parties, and what is dictated by simple economics. See Thorne, 34 B.R. at 431
 
 
 [1]
 I note that the mortgage agreement between the Colegroves and Cardinal does contain a provision providing that, "Borrower shall pay to the Note holder a late charge of 4 percent of any monthly installment not received by the Note holder within 15 days after the installment is due." Apparently, this provision entitles Cardinal to receive four percent interest on arrearage. Nevertheless, the bankruptcy court held that Cardinal failed to produce sufficient evidence to establish that it was entitled to interest on arrearage under the mortgage contract. Since Cardinal has not challenged the bankruptcy court's finding pertaining to its rights under the mortgage agreement on appeal, I will assume for the purposes of discussion that Cardinal is not entitled to interest on arrearage under the contract. In any event, if Cardinal was entitled under the contract to four percent interest on arrearage, I would simply allow Cardinal four percent interest on the arrearage as provided by the agreement
 
 
 [2]
 Of course, many mortgage contracts contain clauses which permit the creditor to accelerate the payment of principal and interest upon the debtor's default. Nevertheless, since the cure provision of Section 1322(b)(5) permits de-acceleration of these types of clauses, e.g., In re Clark, 738 F.2d 869 (7th Cir.1984); Grubbs v. Houston First Am. Savings Assoc., 730 F.2d 236 (5th Cir.1984) (en banc); Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24 (2d Cir.1982), I do not believe that the presence or absence of an acceleration provision in the mortgage contract should affect the outcome of this case