WELLFORD, Circuit Judge.
On September 8, 1983, Harold E. Cole-grove and Delores Ann Colegrove, the debtors, filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Immediately prior to the filing, Cardinal Federal Savings and Loan Association (“Cardinal”) instituted a foreclosure action in state court against the Colegroves’ personal residence. Cardinal held the first mortgage on this realty and sought foreclosure because of the Colegroves’ delinquency in making payments.
Under the Chapter 13 plan submitted by the Colegroves, they were to make up the arrearage owed Cardinal on the first mortgage indebtedness while at the same time continuing to pay the monthly installments due under the mortgage during the term of the plan. On October 3, 1983, Cardinal filed with the bankruptcy court a proof of claim and an application for interest on what it presented as a secured claim. Cardinal claimed an arrearage of $2,495.60. In December this was later modified to reflect all missed payments through November 1983, the new total arrearage being $2,967.60.
On November 30, 1983, the bankruptcy court confirmed the Colegroves’ proposed plan, despite its failure to provide for interest on the arrearage. The bankruptcy court rejected Cardinal’s application, finding Cardinal ■ lacked any statutory or contractual right to interest, and this judgment was affirmed by the district court.
We are called upon to decide whether the bankruptcy court erred in confirming the Colegroves’ proposed plan without any provision for interest on the arrearage. We find little direct precedent on this question which must arise with some frequency in the bankruptcy context. We believe several sections of the Bankruptcy code bear upon the answer to be reached.
*121 Section 1322 of the Code prescribes the contents of a Chapter 13 plan, providing in part that
The plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims;
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of .payments while the case is pending on any unsecured claim on which the last payment is due after the date on which the final payment under the plan is due;
11 U.S.C. § 1322(b). The bankruptcy court relied on this section of the Code in rejecting Cardinal’s application for interest. It reasoned that because a plan could not modify the terms of the mortgage, the mortgagee could not receive interest on the arrearage absent a specific clause in the loan agreement to the contrary. It then concluded that to require the payment of interest would be to modify the mortgage contrary to Section 1322.
Cardinal, on the other hand, argues that two other sections of the Bankruptcy Code dictate a contrary result. Section 506(b) states:
To the extent that an allowed secured claim is secured by property the value of which, ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.
Section 1325(a) provides in part:
The court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan of such claim is not less than the allowed amount of such claim;[1]
Cardinal argues that section 506(b) specifically provides that it be allowed interest. Here the Colegrove residence property securing the claim is valued at $55,000, much more than Cardinal’s claim, and reflecting that the Colegroves have a substantial equity in their home. In the alternative, Cardinal urges that the “cram down” provision of section 1325 requires that interest be allowed. Cardinal’s rationale is that in order to receive the true value of the arrearage, there must be interest paid over the period of repayment.
This court has twice had occasion to consider the meaning of section 1325. In Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982), section 1325 was interpreted to require payment of interest at the current market rate on an arrearage due under an automobile loan agreement. More recently, in Hardy v. Cinco Federal Credit Union (In re Hardy), 755 F.2d 75 (6th Cir.1985), the court affirmed the bankruptcy court’s order denying confirmation of a Chapter 13 plan because of its failure to include interest on the amount due Cinco Federal Credit Union, an unsecured creditor. The court interpreted 11 U.S.C. § 125(a)(4)[2] to require interest on all deferred payments to be made under the plan. In our view, a contrary conclusion would prevent the creditor from realizing the full present value of the amount owed.
*122 The bankruptcy court concluded that neither section 506(b) nor section 1325(a)(5)(B) controlled the present case. We disagree with that rationale and conclusion. First, section 1322(b)(2) prevents a modification of the loan agreement only under certain conditions, while section 1322(b)(5) allows for a “cure” of the arrearage “notwithstanding paragraph (2).” By ordering that interest be paid on the arrearage, there is no modification of the loan agreement. Instead, the interest requirement is merely incident to the “cure,” which is excepted from the rule of section 1322(b)(2). Accord In re Taddeo, 685 F.2d 24, 27-28 (2d Cir.1982).
Second, both sections 506(b) and 1325(a) indicate that interest is allowable. The former provides for interest on all allowed secured claims where the value of the security is greater than the claim. The latter directs the bankruptcy court to confirm a plan only where the creditor will receive the present value of the amount due him. In Hardy we held that an unsecured creditor was entitled to interest under section 1325. It would be anomalous to hold that an unsecured creditor should receive interest, while a secured creditor, such as Cardinal, should not.[3] Section 1322 was not intended to have this effect.
The majority of bankruptcy courts to address the issue have held in favor of allowing interest in this context. In re Stratton, 30 B.R. 44, 46 (Bankr.W.D.Mich.1983) (“interest is required here under § 1325(a)(5)(B) of the Bankruptcy Code to give the creditor the present value of his money”); In re Einspahr, 30 B.R. 356 (Bankr.E.D.Pa.1983) (“the courts agree that, in order to provide the secured creditor with the value of his secured claim ‘as of the effective date of the plan,’ the debt- or must pay interest on that claim”); In re Hibbert, 14 B.R. 891, 894 (Bankr.E.D.N.Y.1981) (“for the Debtors to cure their default, they must presently tender the full amount due; or, in the alternative, tender a greater amount in deferred payments such that the total of such deferred payments is equivalent to receipt of [the total amount due] today”); see also In re Evans, 20 B.R. 175 (Bankr.E.D.Pa.1982); In re Frey, 34 B.R. 607 (Bankr.M.D.Pa.1983).
Essentially only one court is supportive of the bankruptcy and district courts’ decisions here. In re Carr, 32 B.R. 343, 345 (Bankr.N.D.Ga.1983). That court held that “the awarding of interest pursuant to § 1325(a)(5)(B)(ii) would constitute modification of the contract in contradiction to § 1322(b)(2),” and ruled that in the absence of a specific provision in the loan agreement for interest on all missed installments was impermissible under a Chapter 13 plan. That same court reiterated its position in In re Christian, 35 B.R. 229, 232 (Bankr.N.D.Ga.1983) (“In effect, § 1322(b)(2) operates as an exception to the ‘cram down’ provisions of § 1325(a)(5)(B)”). We reject this rationale in refusing to allow interest for the reasons we have stated.
This court discussed, by analogy, this problem in, a Chapter 13 context in Memphis Bank & Trust, the difference being the treatment of both a secured and an unsecured claim in a plan concerning an automobile loan instead of a residence mortgage note. Contract monthly installment payments were required in the approved plan, and this court also allowed the “current market rate” of interest on the creditor’s claim (including the excess over the then present value of the automobile as collateral). The court interpreted the applicable statutory Chapter 13 provisions to mean that the creditor in such situation was “making a new loan to the debtor in the amount of the current value of the collateral,” 692 F.2d at 431, and such creditor was entitled to interest at the “current *123 market value for similar loans at the time.” Id. The effect of such a procedure, allowing interest, according to Memphis Bank & Trust, was “to require full payment in accordance with the contract,” id. at 432, not excluding interest.
We next consider what rate of interest should be allowed. This question has created a split of authority. One view is to limit the interest to the legal rate. See, e.g., In re Marx, 11 B.R. 819 (Bankr.S.D.Ohio 1981). Other courts have looked to the rates prevailing in the market place. See, e.g., Hibbert, 14 B.R. at 894. Finally, the most widely accepted approach has been to limit the creditor to the rate provided for in the original loan agreement.
This last view has been rationalized by the fact that “the contract rate is the rate which the parties agreed was a fair return to the creditor for the debtor’s repayment of the loan over an extended period of time.” Evans, 20 B.R. at 177. Still other courts have viewed the contract rate to be more favorable because the fixing of any other limit might be construed as an impermissible modification of the loan agreement. See Stratton, 30 B.R. at 45-46; Einspahr, 30 B.R. at 356; Frey, 34 B.R. at 611, In re Simpkins, 16 B.R. 956 (Bankr.E.D.Tenn.1982). Finally, one court has stated that the need for “simplicity of operation in Chapter 13 cases,” indicates that the contract rate is a better choice. In re Thorne, 34 B.R. 428, 431 (Bankr.E.D.Tenn.1983). “It may be as fair and workable a solution as can be found.” Id.
We conclude that the most equitable rate to establish in this type of situation is the prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditors claim and the confirmation of the plan in bankruptcy with a maximum limitation on such rate to be the underlying contract rate of interest.[4] See Memphis Bank & Trust, supra. We accordingly Reverse and Remand this matter for further proceedings consistent with the views herein expressed.

. This section has since been amended to reflect that the court may not approve a plan where the value of the property to be distributed is less than that of the claim. 11 U.S.C. § 1325(b)(1)(A).

. This section applies to unsecured creditors and appears analogous to 11 U.S.C. § 1325(a)(5)(B).

. The dissent suggests that Cardinal is being placed in a better position by our allowing the recovery of interest on the arrearage. By allowing the recovery of interest, however, we are merely permitting the creditor to achieve substantially the benefit of its bargain. We fail to see any real distinction under these circumstances between a secured claim and a security interest. A party with a security interest in real estate possesses a secured claim. See Black's Law Dictionary 1215 (5th ed. 1979).

. By limiting the interest rate to that found in the contract, we have struck a fair compromise between what has been agreed on by the parties, and what is dictated by simple economics. See Thorne, 34 B.R. at 431.