**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Harlan ARNOLD and Dorene Arnold, Defendants–Appellants.**

No. 88–1703.

United States Court of Appeals, Sixth Circuit.

Argued May 18, 1989.

Decided July 3, 1989.

Rehearing and Rehearing En Banc Denied Aug. 18, 1989.

Paul B. Newman (argued), Newaygo, Mich., for Harlan Arnold and Dorene Arnold.

Edith A. Landman (argued), Office of the U.S. Atty., Grand Rapids, Mich., for the U.S.

Before MILBURN and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendants-appellants Harlan and Dorene Arnold ("debtors") appeal the judgment of the district court reversing the decision of the bankruptcy court regarding the proper interest rate payable to the United States as a creditor through the Farmers Home Administration ("FmHA"). For the reasons that follow, we affirm.

I.

A.

Debtors, who are farmers located in Mecosta County, Michigan, filed a voluntary joint petition for bankruptcy on February 2, 1987, under newly enacted Chapter 12 of the United States Bankruptcy Code.[1] *See* 11 U.S.C. §§ 1201–1231 (Supp.1989). On May 29, 1987, FmHA filed a proof of claim against debtors in the total sum of $273,-947.28. On November 4, 1987, debtors filed a proposed Chapter 12 plan. FmHA objected to the plan, contending that the debtors' plan did not provide for payment of the present value of FmHA's collateral. *See* 11 U.S.C. § 1225(a)(5)(B). However, on January 21, 1988, the bankruptcy court confirmed the debtors' plan over the objection of FmHA.

On January 29, 1988, FmHA filed a notice of appeal to the United States District

---

**1.** The Family Farmer Bankruptcy Act of 1986, or Chapter 12, became effective October 27, 1986.

Court of the bankruptcy court's order confirming the debtors' plan. *See* 28 U.S.C. § 158(a) ("The district courts ... shall have jurisdiction to hear appeals from the final judgments ... of bankruptcy judges...."). Following a hearing, the district court reversed the order confirming the debtors' plan and remanded the case to the bankruptcy court for further proceedings.[2] This timely appeal by the debtors followed.

## B.

The central facts relevant to this appeal are not in dispute. Following the filing of debtors' Chapter 12 bankruptcy petition, the United States filed a proof of claim stating that the debtors owe FmHA a total of $273,947.28, consisting of $216,825.07 in principal and $57,122.21 in interest. FmHA claimed that at the time of filing, debtors' account was delinquent in the amount of $123,537.25.

The indebtedness to FmHA consists of five notes executed from December 23, 1975, through August 28, 1984. The notes are at varying rates of interest with the first note at 9 percent, the second and third notes at 5 percent, the fourth note at 3 percent, and the fifth note at 7 and ¼ percent, per annum. The notes are secured by mortgages on real estate and security agreements on chattels.

In lieu of a contested hearing, the debtors and FmHA agreed to accept the values of the collateral determined by an independent appraiser. The agreed-upon value of the secured real estate is $94,520.00, and the value of the chattels is $80,920.00, which, after undisputed adjustments, allows a total secured claim by FmHA of approximately $157,000.00.

The plan submitted by the debtors proposed repayment of only a portion of the first two notes executed between the debtors and FmHA. The debtors proposed that the secured value be prorated between the first two notes according to the unpaid principal balance and accrued interest on each note. The payment on the allowed secured claim would approximate 83 percent of the total amount due on both these notes. After prorating the secured debt among the first two notes, the debtors proposed repayment at the contract rate of interest provided in the notes with full payment by the respective original due date of each note. With respect to the remaining indebtedness evidenced by the third, fourth, and fifth notes between debtors and FmHA, debtors proposed the same treatment for these amounts as for the general class of unsecured creditors.

Also, prior to the debtors' filing of their petition under Chapter 12, they had qualified for an "interest credit" under applicable FmHA regulations. Pursuant to this interest credit, received in 1986, the contract rate of interest upon the first note executed (9 percent) was waived, and the debtors were paying only 1 percent interest on this note at the time of filing. The debtors proposed in their plan that they would continue to pay the 1 percent interest rate on the amount prorated to the first note until such time that FmHA, pursuant to periodic review conducted in connection with the interest credit program, determined that the financial condition of the debtors had improved to the extent that they no longer qualified for the interest credit. Should this occur, debtors maintained that the interest rate should then revert to the 9 percent contract rate. The interest rate on the amount prorated to the second note would remain the contract rate throughout the plan. The 1 percent interest credit rate on the first note and the 5 percent rate on the second note are less than FmHA's current market rates.

FmHA objected to the proposed plan. Among other things, FmHA argued that the debtors should not be allowed to retain

2. In *In re Gardner,* 810 F.2d 87 (6th Cir.1987), we held that where a district court remands an action to the bankruptcy court, the district court's order is nonetheless appealable unless it "remands the case for a *factual* determination on an issue *central* to the case...." *Id.* at 91 (emphasis in original). *But see In re Riggsby,* 745 F.2d 1153 (7th Cir.1984) (holding that if a district court remands a case to the bankruptcy court the order is not final). In the present case, there are no factual determinations relevant to the issues to be made by the bankruptcy court upon the district court's remand. Therefore, we have jurisdiction over this appeal.

the interest credit for special hardship cases in effect at the time debtors filed their petition in bankruptcy. FmHA further asserted that it should receive its current interest rate applicable to new loans on its allowed secured claim. FmHA maintained that this was only fair given that the third, fourth, and fifth loans executed would receive unsecured creditor status as would 17 percent of the indebtedness on the first and second loans. Testimony before the bankruptcy court revealed that FmHA's current interest rates were then approximately 10 percent for real estate loans and 9 and ½ percent for chattel loans.

Before the bankruptcy court, the issue centered on whether the interest rate on the allowed secured claim should be the contract rate (less the temporary interest credit provided the debtors qualified for the credit as determined by the FmHA) or, as FmHA maintained, the current market rate being charged by it for new loans. The bankruptcy court held that the interest rate to be charged on FmHA's loans should be the *lesser* as between the contract rate or the current market rate and that the debtors should receive the benefit of the interest credit program until further review is conducted by FmHA. The bankruptcy court relied upon *In re Colegrove*, 771 F.2d 119 (6th Cir.1985), wherein we held that "a *maximum limitation* on [the interest rate to be awarded is] the underlying contract rate of interest." *Id.* at 123 (emphasis in original). The bankruptcy court also agreed with the debtors that the notes first in time would be first entitled to be secured.

As earlier stated, FmHA appealed the confirmation of the debtors' Chapter 12 plan to the district court pursuant to 28 U.S.C. § 158(a). The district court rejected the bankruptcy court's interpretation of *In re Colegrove, supra,* and, instead, held that "where there is a new bargain struck, where there is a write-down, the creditor should be entitled to the current interest on that obligation." Debtors argue that the district court erred in reversing the bankruptcy court's decision.

On appeal the primary issue before us is whether the interest rate to which the FmHA is entitled on its allowed secured claim is the current market rate, the contract rate, or the lesser of the two. We find that resolution of this issue requires interpretation of the decisions of this court in *In re Colegrove*, 771 F.2d 119 (6th Cir. 1985), and *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982).

## II.

Under Chapter 12, rehabilitation plans "may ... modify the rights of holders of secured claims ... or leave unaffected the rights of holders of any class of claims...." 11 U.S.C. § 1222(b)(2). Payment of allowed secured claims should be provided for "consistent with section 1225(a)(5) of this title...." 11 U.S.C. § 1222(b)(9).

Section 1225(a) provides that the bankruptcy court should confirm a proposed plan provided certain conditions are met. With respect to allowed secured claims, section 1225(a)(5) provides that a court cannot confirm a plan unless:

    (A) the holder of such claim has accepted the plan;

    (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

    (ii) the value, as of the effective date of the plan, of the property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

    (C) the debtor surrenders the property securing such claim to such holder....

11 U.S.C. § 1225(a)(5).

The debtors in the present case were proceeding with respect to FmHA's allowed secured claim under 11 U.S.C. § 1225(a)(5)(B)(i) & (ii). This subsection is identical to that found in Chapter 13. *See* 11 U.S.C. § 1325(a)(5)(B); *see also* 11 U.S.C. § 1129(b)(2)(A). Indeed, when Congress enacted Chapter 12, it noted that "[t]his new chapter is closely modeled after existing Chapter 13." H.R.Conf.Rep. No. 99–958, 98th Cong., 2d Sess., *reprinted in,*

1986 U.S.Code Cong. & Admin.News 5246, 5249. Congress went on to state that while Chapter 12 is modeled after Chapter 13,

[a]t the same time ... the new chapter alters those provisions that are inappropriate for family farmers

.    .    .    .    .

Under this new chapter, it will be easier for a family farmer to confirm a plan of reorganization.

*Id.* However, as section 1225(a)(5)(B) and section 1325(a)(5)(B) are identical, we hold that the provisions should be similarly construed.

Section 1325(a)(5)(B), like section 1225(a)(5)(B), is sometimes referred to as a "cramdown" provision because a secured creditor is forced to accept secured status under the plan only to the extent of the value of the collateral at the time. *See, e.g., In re Kain,* 86 B.R. 506, 515–520 (Bkrtcy.W.D.Mich.1988). The creditor retains a lien on the collateral and must receive under the plan, "the value, as of the effective date of the plan, of the property to be distributed ... on account of such claim...." 11 U.S.C. § 1325(a)(5)(B)(ii). Any indebtedness due the creditor in excess of the value of the collateral is included with other allowed unsecured claims.

In *Memphis Bank & Trust Co. v. Whitman, supra,* we held that section 1325(a)(5) requires the bankruptcy court to assess interest on an allowed secured claim for the present value of the collateral in order to avoid dilution of the value of the claim through the delay in payment. We noted that section 1325(a)(5) strikes a compromise. Under this section, the debtor can "cramdown" a plan repaying only the "allowed secured claim," *i.e.,* the amount of the debt to the extent it is secured by the present value of collateral taken by the creditor. The creditor, on the other hand, is assured that the plan will require the debtor to pay "the value, as of the effective date of the plan, of property to be distributed...." 11 U.S.C. § 1325(a)(5)(B)(ii). As we explained:

The concept behind the treatment of secured claims under the new Chapter 13 is fairly simple. The total claim of the

secured creditor which is to be allowed is divided into two parts, the secured portion of the claim and the unsecured portion. These two are called in section 1325 the "allowed secured claim" and the "allowed unsecured claim." The secured portion of the total claim represents the present value of the collateral and the unsecured portion is the remainder, i.e., the amount the allowed claim exceeds the value of the collateral.

*Memphis Bank,* 692 F.2d at 429.

The advantage to the creditor of the approach in section 1325 is that the creditor knows the plan will require the debtor to repay the debt to the extent of the value of the security. Yet we held in *Memphis Bank* that as this amount will not be paid immediately, interest should be assessed on the amount which the debtor will repay to compensate the creditor for the use of his or her money. We explained, "[s]ection 1325(a)(5)(B) seems to require the Bankruptcy Court to assess interest on the secured claim for the present value of the collateral (if it is not to be paid immediately) in order not to dilute the value of that claim through delay in payment." *Id.*

We recognized in *Memphis Bank* that under section 1325, the creditor is required, in effect, "to make a new loan in the amount of the value of the collateral rather than repossess it, [but] the creditor is entitled to interest on his loan." *Id.* The facts of the present case are illustrative. FmHA is owed a total of $237,947.28. By the parties' stipulation, FmHA is secured only to the extent of approximately $157,000.00. Section 1225(a)(5)(B) requires the debtors to include in their plan, provisions repaying the debt to the extent secured and transferring to FmHA a continuing lien against the collateral. However, because FmHA will not be paid the "allowed secured claim" immediately, under *Memphis Bank,* interest is to be awarded.

In *Memphis Bank,* the debtor owed $9,799.00 on an automobile loan at the time he filed his Chapter 13 petition. The present value of the automobile was $4,800.00, and thus the plan contemplated payment of an "allowed secured claim" of $4,800.00 to the creditor. The remaining amount would be considered an "allowed

unsecured claim." The confirmed plan provided the interest rate with respect to the allowed secured claim would be an arbitrary 10 percent rate rather than the contract rate. Because we viewed the "cramdown" provision of section 1325(a)(5)(B) as forcing the creditor to make a new loan in the amount of the current value of the collateral, we found the creditor entitled to the current market rate for similar loans at the time the loan was made. The action was remanded to the bankruptcy court for clarification of the interest rate awarded. We held:

> [I]n the absence of special circumstances bankruptcy courts should use the current market rate of interest used for similar loans in the region.

*Memphis Bank*, 692 F.2d at 431.

In the present case, the testimony before the bankruptcy court was that the FmHA's current market rate was 10 percent for real estate loans and 9 and ½ percent for chattel loans. The debtors' plan, however, referred to the contract rate for the first secured loan issued and suggested a 1 percent rate as to the first loan and a 5 percent rate as to the amount prorated to the second loan. The debtors argue that *In re Colegrove*, 771 F.2d 119 (6th Cir. 1985), supports the interest rates suggested in their plan.

In *Colegrove*, the secured creditor mortgagee with respect to the debtor's personal residence had instituted a foreclosure action prior to the time of filing. The debtors were delinquent in their payments, and the arrearage was $2,967.00. The residence securing the claim, however, was valued at $55,000.00, and thus the creditor was in a completely secured position.

In their Chapter 13 plan, the debtors in *Colegrove* proposed to pay all future mortgage payments to the secured creditor and cure the unpaid arrearage. The debtors did not, however, propose to pay any interest with respect to the arrearage.

We concluded that the debtors were required to pay interest on the mortgage arrearage. Otherwise, the creditor would be deprived of the full present value of the amount it was owed. *Id.* at 122. With respect, however, to the rate of interest, the majority in *Colegrove* concluded that the creditor should receive the prevailing market rate of interest "with a *maximum limitation* on such rate to be the underlying contract rate of interest." *Colegrove*, 771 F.2d at 123 (emphasis in original; footnote omitted).

FmHA argues that *Colegrove* and *Memphis Bank* can be reconciled in that the creditor in *Colegrove* was not forced to accept a write-down ("cramdown") of its note. The creditor in *Colegrove* was completely secured and was not required to accept unsecured status as to any portion of its debt. In *Memphis Bank*, however, the creditor was forced by operation of law to write-down the current value of the loan, thus, as articulated in *Memphis Bank* creating a new loan to which the creditor was entitled to interest at the current market rate, even if the current market rate exceeded the contract rate. *Memphis Bank*, 692 F.2d at 431 n. 3. Thus, FmHA argues that *Colegrove* should be limited to its facts and cites in support of this proposition language in *Colegrove* to the effect that the contract rate maximum limitation should apply "in this type of situation." *Colegrove*, 771 F.2d at 123.[3] We agree.

Our holding in *Memphis Bank* applies to situations like the present one where creditors are forced to accept a "cramdown" in return for a new loan to the extent of the value of the collateral. Under *Memphis Bank*, creditors are entitled to current market rates of interest with respect to the new loan.[4] We held in *Memphis Bank* that this was only equitable given the result reached under 11 U.S.C. § 1325(a)(5)(B), which, as we have indicated, is identical to section 1225(a)(5)(B). We also note that

---

**3.** We also note that *Colegrove* deals with a mortgage on a principal residence, which is entitled to somewhat different protections under the Bankruptcy Act. Specifically, 11 U.S.C. § 1322(b)(2) provides that a plan may not modify "a claim secured ... by a security interest in real property that is the debtor's principal residence...." Thus, a debtor may not write-down a different valuation in this situation.

**4.** The debtors also argue that because the creditor in this case is the FmHA, a federal agency whose very purpose is to establish programs

other bankruptcy courts within the Sixth Circuit have reached similar conclusions. *See In re Kain*, 86 B.R. 506, 520 (Bkrtcy. W.D.Mich.1988) (*"Colegrove* only creates a very narrow exception to the general rule contained in *Memphis Bank.");* *In re Gardner*, No. 88–0027 (May 3, 1988 W.D. Mich.). *But see In re Turner*, 87 B.R. 514, 517–18 (Bkrtcy.S.D.Ohio 1988). It would not have been equitable to allow the creditor in *Colegrove* to recover interest at a rate in excess of that prescribed in the contract; for then the creditor would have received a windfall because of the bankruptcy. That is not the situation here.

### III.

In sum, we hold that where a "cram-down" occurs under section 1225(a)(5)(B) and a creditor is forced to write-down a portion of its note, a creditor is entitled to receive its current market rate on the "new loan."[5] In our view, *Colegrove* is clearly distinguishable. The judgment of the district court is

AFFIRMED.

---

assisting farmers, a different rule should apply. However, we note that the FmHA is generally treated as other creditors, *see, e.g., United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), and, in any event, had Congress intended a different rule, it could have so provided in Chapter 12.

5. Our conclusion makes it unnecessary to address FmHA's remaining arguments; *viz.,* that the "first in time" approach proposed in the debtors' plan is erroneous and that the debtors should not be afforded the benefit of the interest credit program.