930 F.2d 1361
 59 USLW 2649, 21 Bankr.Ct.Dec. 986, Bankr.
L. Rep. P 73,939
 In re Kenneth FISHER and Lanae Fisher, Debtors.
UNITED STATES DEPARTMENT OF AGRICULTURE, acting Through the
FARMERS HOME ADMINISTRATION, Appellant,
v.
Kenneth FISHER and Lanae Fisher, Appellees.
 No. 89-5407.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1990.
Decided April 22, 1991.
 
 Lori Beranek, U.S. Dept. of Justice, Washington, D.C., for appellant.
 Kenneth Horner, Bismarck, N.D., for appellees.
 Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 The Farmers Home Administration (FMHA) appeals a final judgment entered in the United States District Court for the District of North Dakota confirming the Chapter 12 reorganization plan proposed by Kenneth and Lanae Fisher (debtors) applying a discount rate, based on the weighted averages of the below-market contract interest rates on the three FMHA loans involved. FMHA maintains that, under the plain language of 11 U.S.C.A. Sec. 1225(a)(5)(B) (West 1986), a discount rate based upon a "market rate" formula should have been applied to determine the present value of the FMHA's allowed secured claim. We agree and accordingly reverse the judgment of the district court.
 
 
 2
 The underlying facts are not disputed. In their Chapter 12 plan, debtors proposed to repay the FMHA its allowed secured claim under 11 U.S.C. Sec. 1225(a)(5)(B) using a discount rate based on the contract rate of interest on the three FMHA loans involved. Despite the FMHA's objection that the contract rate of interest failed to provide the FMHA with the present value of its allowed secured claim as required by 11 U.S.C. Sec. 1225(a)(5)(B), the bankruptcy court confirmed the plan. In re Fisher, No. 88-05611 (Bankr.D.N.D. Jan. 25, 1989). On appeal, the district court affirmed the bankruptcy court's decision, relying on In re Doud, 74 B.R. 865 (S.D.Iowa 1987), aff'd on other grounds sub nom., United States v. Doud, 869 F.2d 1144 (8th Cir.1989). In re Fisher, No. A1-89-053 (D.N.D. June 6, 1989).
 
 
 3
 Chapter 12 of the Bankruptcy Code was specifically designed to assist farm families needing financial rehabilitation. Although farm families in the past could proceed under Chapter 11 or 13, the legislative history points out that the farm family sometimes had too much debt to qualify as debtors under Chapter 13, and many farm families found Chapter 11 too complicated and unworkable. Therefore, Chapter 12 was created to "give farm families facing bankruptcy a fighting chance to reorganize their debts and to keep their land." H.R.Rep. No. 958, 99th Cong., 2d Sess., 48-49 (1986), reprinted in 1986 U.S.Code Cong. & Admin.News 5249-5250. Congress explained that Chapter 12 "offers farm families the important protection from creditors that bankruptcy provides while at the same time preventing abuse of the system and insuring that farm lenders receive a fair repayment." Id.
 
 
 4
 Congress enacted 11 U.S.C. Sec. 1225(a)(5)(B) to insure that creditors, such as FMHA, do "receive a fair repayment." Section 1225(a)(5)(B) states that a Chapter 12 reorganization plan can only be confirmed if the plan provides the holder of each secured claim (the secured creditor) with "the value, as of the effective date of the plan, of property to be distributed ... not less than the allowed amount of such claim." 11 U.S.C. Sec. 1225(a)(5)(B)(ii). This section is referred to as the "cramdown provisions" because a secured creditor, such as FMHA, is forced to accept the reorganization plan if the reorganization plan provides for payment of the present "value, as of the effective date of the plan, of the collateral securing the claim." When collateral is worth less than the total amount claimed by the creditor, the "cramdown provision" allows the farm debtor to forego repayment of the unsecured portion of the loan. The pre-petition loan at issue here was a limited resource operating loan. Limited resource operating loans are loans that FMHA makes at below-market interest rate to assist beginning farmers, undercapitalized farmers, and farmers who are unable to obtain conventional loans. To qualify for such loans, farmers must own or operate a small or family farm, meet low income requirements, and must be unable to obtain conventional credits. Also, applicants must have underdeveloped managerial skills, limited education, and must show that a reasonable standard of living could not be obtained without the below market limited resource loan rate. 7 C.F.R. Secs. 1941.4(h), 1943.4(h).
 
 
 5
 The debtors herein are farmers who filed a joint voluntary petition for bankruptcy under Chapter 12 of the Bankruptcy Code on July 26, 1988. On September 9, 1988, FMHA filed a proof of claim against debtors in the sum of $281,556.22. Because the debtors had insufficient collateral to recover FMHA's claims, which were secured by cattle and machinery, the claims were written down, pursuant to the "cramdown" provisions of Sec. 1225(a)(5)(B)(ii). Thus, FMHA was left with a total allowed secured claim of $65,774 based on three FMHA limited resource operating loans.
 
 
 6
 On January 5, 1989, the debtors proposed a plan to repay the three FMHA limited resource operating loans that FMHA had made at below market interest rates of 7.25%, 4.5%, 4.5%, respectively over a 12-year period at a new interest rate of 5.41%. The 5.41% new interest rate constitutes the weighted average of interest rates on three prior FMHA limited operating resource loans.
 
 
 7
 FMHA objected to the proposed 5.41% discount interest rate that the debtors' reorganization plan provided because it failed to satisfy the requirements of 11 U.S.C. Sec. 1225(a)(5)(B) and to provide for the payment of the present "value," as of the effective date of the plan, of FMHA's allowed secured claim. At the confirmation hearing, FMHA argued that the appropriate standard for determining the discount rate was the "market rate" approach. FMHA presented evidence at the November 28, 1988, bankruptcy court hearing that the current market discount rate for FMHA loans was 9.50%.
 
 
 8
 On January 25, 1989, the bankruptcy court over the objections of FMHA approved debtors' plans which called for repayment of FMHA's allowed claims at the below market contract rate of interest. The theory or the basis of the bankruptcy court and the district court was that the discount rate should be based on the contract rate for below market FMHA limited resource operating loans instead of the standard market rate in order to advance FMHA's lending program policy of assisting disadvantaged farmers. The plain language of Sec. 1225(a)(5)(B) states that "with respect to each allowed secured claim" the confirmation of a reorganization plan can only occur if the plan provides that the "value, as of the effective date of the plan of the property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the amount of such claim." 11 U.S.C. Sec. 1225(a)(5)(B)(ii) (emphasis added). Simply put, Sec. 1225(a)(5)(B) states that a reorganization plan can only be confirmed if the secured creditor receives as of the effective date of the plan the value of the allowed claim to the extent the claim is secured by collateral.
 
 
 9
 The explicit terms of Sec. 1225(a)(5)(B) require that secured creditors are to be treated equally. The "cramdown provision" itself makes no exceptions. The object of Sec. 1225(a)(5)(B) is to provide all secured creditors with either (1) the collateral or (2) its present value equivalent. It makes no distinction between the present value of claims that result from special programs such as FMHA's limited resource operating loans and those of any other secured creditors. Section 1225(a)(5)(B), in our view, entitled FMHA to have its secured claim valued under the "market rate" approach. We hold that the district court, in ignoring the language of the "cramdown provision," wrote into the statute a requirement that FMHA must continue to subsidize the debtors under the favorable terms of the original loan, even though the original loan had ceased to exist after the debtors filed the bankruptcy. Having filed for bankruptcy under Chapter 12, we hold that FMHA enters the bankruptcy proceedings the same as any other creditors and is thus entitled to have its claim valued using a discount rate based not on the contract rate of interest, but on the "market rate" of interest. Thus, we find that the district court exceeded its authority in ruling that the nature of the loan and the identity of the lender should govern over the clear mandate of Sec. 1225(a)(5)(B).
 
 
 10
 The debtors herein rely upon this court's decision in United States v. Doud, 869 F.2d 1144 (8th Cir.1989) to sustain their position; however, we find Doud inapposite. In Doud, we approved the "market rate" approach, citing In re Monnier Bros., 755 F.2d 1336 (8th Cir.1985) (Monnier ) and United States v. Neal Pharmacal Co., 789 F.2d 1283 (8th Cir.1986), and affirmed the district court's use of "market rate" to determine present value. We stated
 
 
 11
 The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate the court must consider the prevailing market rate for a loan of a term equal to the payment period, with due consideration for the quality of the security and the risk of the subsequent default.
 
 
 12
 Monnier, 755 F.2d at 1339 (quoting 5 Collier on Bankruptcy Sec. 1129.03, at 1129-65 (15th ed. 1988)).
 
 
 13
 In Doud, the issue decided was what method was to be used to determine the "market rate." The Doud court decided the discount rate or market rate to be applied to FMHA's commercial rate interest loans was the yield on Treasury Bonds plus a 2% adjustment to account for risk factor. Here, the issue is, not how to determine market rate, but whether the contract rate of interest, used for granting FMHA's original limited resource loans to solvent debtors, provides FMHA with the "present value" of its allowed secured claim as required by 11 U.S.C. Sec. 1225(a)(5)(B)(ii) after the debtors file for bankruptcy. Therefore, this case is not Doud.
 
 
 14
 More on point is United States v. Arnold, 878 F.2d 925 (6th Cir.1989), also involving special loans, wherein debtors who were farmers, filed a voluntary joint petition for bankruptcy under Chapter 12 of the United States Bankruptcy Code.[1] See 11 U.S.C. Secs. 1201-1231 (Supp.1989). There the Sixth Circuit, faced with the same issue presented here, interpreted Sec. 1225(a)(5)(B)(ii) as requiring all secured creditors, including FMHA, to receive a discount rate based on the current market rate of interest, regardless of the original nature of the loan. The Arnold court viewed the "cramdown" provision as a compromise between the debtor and the secured creditor, i.e., the debtor, over the objection of the secured creditor, is allowed to "cramdown" a payment plan repaying only the secured portion of the debt. "The creditor is required in effect 'to make a new loan in the amount of the value of the collateral....' " Arnold, 878 F.2d at 928. But in exchange for forced acceptance of the repayment plan, the debtor is assured that he will receive "the value, as of the effective date of the plan, of the property to be distributed...." 11 U.S.C. Sec. 1225(a)(5)(B)(ii). The court in Arnold explained that because the "cramdown" provision forces the creditor to make a new loan in the amount of the current value of the collateral, the creditor is entitled to the current market rate under the repayment plan. Arnold, 878 F.2d at 929.
 
 
 15
 Although we are sympathetic to the debtor-farmers plight, Sec. 1225(a)(5)(B)(ii) dictates that all holders of secured claims receive the present value, as of the effective date of the plan, of property to be distributed under the plan. Therefore, we hold that FMHA must be paid the market interest rate rather than the 5.41% contract interest rate.
 
 
 16
 Neither debtors nor the district court directly addressed FMHA's claim that the market rate is 9.5%. Thus, it could be argued that we should adopt FMHA's proposed rate without further discussion.
 
 
 17
 However, we question whether FMHA has correctly calculated the market rate. FMHA argues that the market rate should be calculated by ascertaining (1) the value of debtors' property, (2) the interest rate FMHA would collect if it invested that amount in treasury notes, and (3) the "risk factor," which reflects the risk of default by debtors. See Doud, 869 F.2d at 1146. On the other hand, it could plausibly be argued that because FMHA must sell its land to local farmers, the "market rate" should be defined as the rate FMHA could realistically expect to receive if it sold the property to local farmers. This approach would preclude courts from requiring the debtors to pay more for the property than another buyer. As the market rate issue was not adequately briefed before this court, we remand this case to the district court so that the proper market rate may be defined and determined.
 
 
 18
 Accordingly, the judgment of the district court is reversed and the case remanded with directions to proceed in accordance with the decision of this court.
 
 
 
 [1]
 The Family Farmers Bankruptcy Act of 1986, or Chapter 12, became effective October 27, 1986