**In re Cecil P. BRANCH and Joy D. Branch, Debtors.**

**Bankruptcy No. 90–02049.**

United States Bankruptcy Court,
N.D. Florida,
Panama City Division.

May 6, 1991.

W. Kirk Brown, Tallahassee, Fla., for Farm Credit.

Roy F. Blondeau, Jr., Asst. U.S. Atty., Tallahassee, Fla., for FmHA.

C. Edwin Rude, Jr., Tallahassee, Fla., for debtors.

Walter W. Kelly, Albany, Ga., trustee.

## ORDER ON CONFIRMATION OF PLAN UNDER CHAPTER 12

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

After winding its way down a long and torturous path, this Chapter 12 case came on for hearing for confirmation of the debtors' amended plan under Chapter 12 on March 12, 1991. Subsequent to the hearing, and in response to objections filed by the Farm Credit of Northwest Florida, ACA, f/k/a Farm Credit Bank (Farm Credit) the debtors filed a second amendment to debtors' amended plan under Chapter 12. Farm Credit and the United States of America through the Farmers Home Administration (FmHA) have both objected to the terms of the plan. For the reasons set forth herein, the plan as amended cannot be confirmed.

The debtors in this case live and farm in Jackson County, Florida on several parcels of property which are subject to mortgages in favor of Farm Credit and FmHA. The amount due under the claim of Farm Credit as of March 5, 1991, was $86,417.45 and was secured by a first mortgage on 167.8 acres with a value as determined by this court of $83,900 plus 34,008 lbs. of peanut allotment valued at .50 per pound for total collateral value of $100,904. The claim of Farm Credit is therefore fully secured.

Farmers Home Administration filed its proof of claim reflecting a total indebtedness due as of the date of the petition of $111,661.91. This claim is based on various promissory notes and extensions thereof signed by the debtor between 1974 and 1986 and is secured by mortgages on three (3) parcels of real property owned by the debtors plus crops, equipment and other chattels. All three properties owned by the debtors are pledged as security for the entire claim of FmHA. Farmers Home's mortgage position is first with respect to one acre and the homestead, valued at $50,000 and 26 acres valued at $13,000 and it is second with respect to the 168.7 acres on which Farm Credit has the first mortgage. Farmers Home's claim is also secured by a first lien on equipment valued at $9,900. The total value of FmHA's security being approximately $87,300, its claim is undersecured.

Under the latest amendment to the plan, the debtors proposed to deed to Farm Credit a total of 148.14 acres of the 167.8 acres on which Farm Credit has a mortgage with a credit be given against Farm Credit's claim in the amount of $72,746.00 representing the per acre value of the property as previously established by the court at the valuation hearing. Included in the parcel to be returned are 84.8 acres of woodlands at a value of $335.00 per acre and 63.34 acres of cultivatable farm land at a value of $700.00 per acre. The debtors propose to retain the remaining 19.6 acres and to pay the balance of Farm Credit's claim after credit for the value of the property returned, over twenty (20) years at an interest rate of 11% per annum. Furthermore, the debtors would grant to Farm Credit as part of the surrender of property an easement across their remaining property to permit access to that property being surrendered.

■ Farm Credit has objected to the plan as amended and has also moved for a new trial on the issue of valuation of the property securing its claim. The basis for Farm Credit's objection and motion for new trial centers primarily on Farm Credit's assertion that the value of the property to be returned to Farm Credit cannot be established merely by taking the value of the farm as a whole and pro-rating the per acre values to the different portions of the farm. Farm Credit asserts that due to the limited and difficult access to the parcel proposed to be surrendered, its value as a separate parcel is less than its contributory value to the farm as a whole. Farm Credit also objects to the provision of the plan which provides that the property will not be surrendered until June 1, 1991. However, it appears that this problem has been resolved between the debtors and Farm Credit with the debtors to lease from Farm Credit that portion of the property to be surrendered on which the debtors are currently growing their 1991 watermelon crop.

Farm Credit's objection with regard to the value to be attributed to the property to be surrendered is well founded. Section 506(a) of the Bankruptcy Code provides, regarding the valuation of property securing a claim that "such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest". 11 U.S.C. § 506(a). Here, the farm was previously valued as an entire tract with its farm land/woodland mix and with the access present as to the whole farm. When the farm is split into two pieces and access to one part limited, the value of that portion which has been severed would necessarily be different from that of the farm as a whole. In another recent case, *In re Braxton*, 124 B.R. 870 (Bankr.N.D.Fla. 1991), we considered another Chapter 12 plan through which the debtors proposed to surrender to the secured creditor a patchwork of parcels out of the entire farm with credit be given at the per acre value as determined for the whole farm. In that case, as in this case, we found that the secured creditor could not be forced to accept a value based on a per acre value as established for the whole farm but instead the parcels had to be valued separately in light of the proposed disposition of those parcels. The same must be done in this and in any other case in which the debtors seek to surrender to the secured creditor only a portion of the property securing its claim.

With respect to the claim of FmHA, the debtor's plan proposes various treatments of the different notes and parcels of property. The homestead and one acre was originally pledged as security for a home loan which had a balance as of March 1, 1991 of $10,951.45 payable at 8.5% with a remaining term of seventeen (17) years. The home further secured a second note and mortgage with a balance of $39,048.00 as of March 1, 1991, payable at five (5%) percent interest and being due on March 30, 2016. The debtors' plan proposes to pay the first note in full over the remaining 17 years at the contract rate of 8.5%. The second note would be paid in full over 20 years at the contract rate of five (5%) percent which schedule represents a five (5) year acceleration of the maturity of that note. With respect to the 26 acre parcel valued at $13,000.00, the plan provides payment of that sum over 20 years at an interest rate of 10.25% per annum. With respect to any value in the 167.8 acres plus the peanut quota in excess of the claim of Farm Credit, the debtors propose to pay that value to FmHA at a contract rate of five (5%) percent interest over a period of 20 years (a five year acceleration according to the debtors). Additionally, the debtors and FmHA have agreed on the value of equipment securing FmHA's claim in the amount of $9,900.00 with a tractor valued at $2,500.00 to be returned to FmHA and the remaining balance of $7,400.00 to be paid by debtors over a seven (7) year period at 11% per annum.

■ Farmers Home Administration has objected to confirmation primarily based on the interest rates provided by the debtor in the plan. It is FmHA's position that inasmuch as its claims are impaired,

then it is entitled to receive a market rate of interest rather than the contract rate as provided in the various notes. In effect, what the debtors are attempting to do is to pay certain of the notes off under substantially their original terms while paying off only a portion of the balance of the remaining notes. However, as previously pointed out, all of the real property of the debtors is pledged as security for the entire indebtedness due and owing to FmHA. Given the collateralization of the entire amount by all of the property, the debtors, in our view, are not entitled to pick and choose which notes to pay under their original terms but must instead treat the entire claim of FmHA with respect to all of the property securing such claim. While the claim of a creditor holding security is bifurcated pursuant to § 506(a) of the Bankruptcy Code into a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property and an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim, we are aware of no authority permitting the secured claim as in the instant case, where all of the collateral is pledged to secure several notes, being broken down into several different claims with each receiving separate treatment. Therefore, we find that with respect to the entire secured claim of FmHA, FmHA is entitled to the treatment provided in § 1225(a)(5) which provides as follows:

(5) With respect to each allowed secured claim provided for by the plan—

(A) The holder of such claim has accepted the plan;

(B) (i) The plan provides that the holder of such claim retain the lien securing such claim;

(ii) The value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) The debtor surrenders the property securing such claim to such holder;

Thus, FmHA is entitled to receive as of the effective date of the plan value equal to the allowed amount of its secured claim. Where, as in the instant case a "cramdown occurs where a creditor is forced to write down a portion of its claim, it is entitled to receive the current market rate on the 'new loan' rather than the contract rate applicable to the loan's being restructured". *United States v. Arnold,* 878 F.2d 925 (6th Cir.1989). Accordingly, we find that the treatment provided with respect to FmHA's claim does not meet the requirements of § 1225(a)(5) of the Bankruptcy Code.

■ Farmers Home also objected to the plan asserting that the debtors had not demonstrated that it was feasible. Pursuant to § 1225(a)(6) of the Bankruptcy Code, the court is required to find in connection with confirmation of a Chapter 12 plan that "the debtor will be able to make all payments under the plan and to comply with the plan". At hearing on confirmation, the debtor testified regarding the results of his farming over the previous year and with regard to his projected farm income during the life of the plan. Although the exact amounts which will be required for payments to secured creditors cannot be determined presently in view of our ruling on the other issues presented herein, we can still evaluate the issues regarding feasibility. The debtors' plan as currently on the table would require annual payments to the various secured creditors totalling to $15,261.75. As of the date of the hearing on confirmation, the debtors had available for distribution to creditors a total of approximately $17,400.00 after deduction for the debtors' living expenses. These funds were generated during the 1990 crop season which was a season of severe drought resulting in the debtors' reliance on crop insurance proceeds for a substantial portion of the money. The debtors' projections for the 1991 crop season would yield approximately $97,413.00 in income which, after payment of an operating loan to Alpha Coop of approximately $30,000.00 and living expenses of approximately $20,-000.00 would result in roughly $47,000.00 being available for distribution to creditors. This projection is based on the debtors'

plan to plant 20 acres of watermelons, 70 acres of peanuts and 80 acres of corn. While the debtors raised watermelons and peanuts during the 1990 crop season, the 80 acres of corn represents an additional crop to be planted by them.

The main thrust of FmHA's objection to feasibility regards the debtor's projections for their peanut harvest. In that regard, the debtors project that they will be able to produce 3,000 pounds of peanuts per acre for a gross poundage of 210,000 pounds. Farmers Home introduced evidence showing that for the years 1985–1989, the debtors only produced 3,000 pounds per acre in one year and the five year average was 1,990 pounds per acre. While this evidence does raise a serious question regarding the debtors' ability to meet the projection of 3,000 per acre, that ability is not crucial to the success of the debtors' plan. In addition to the 34,008 of peanut allotment quota which we have previously found was owned by the debtor, he also has available additional quota poundage owned by his father which gives him for his entire farm operation a total allotment of 129,000 pounds. Based on the debtors' projections of a price of .35 per pound for quota peanuts, his total income for the 129,000 pounds of quota peanuts would be $45,150. To produce that $45,150 in income, the debtors would have only to produce 1842 pounds per acre, a yield well within their means based on their historic production. All production above the 129,000 pound quota was projected to be sold at a price of 17.5 cents per pound with the additional 81,000 pounds projected above the quota to produce only $14,175. Thus, even if the debtor only produced up to his quota or 1,842 pounds per acre, his total income would only drop $14,175. That would still leave an excess of $32,000 available for payments to creditors under his projections. Farmers Home has not challenged any of the figures contained in the debtors' projections other than the projected peanut yield and accordingly we find that those projections support the debtor as being able to make payments as required under the plan.

Based on the foregoing, confirmation of the debtors' plan will be denied at this time. Prior to final consideration of any amendments the debtor may propose to cure the deficiencies identified herein, further evidentiary hearings must be held to determine the value of the property to be surrendered to Farm Credit and to determine the appropriate rate of interest to be paid to FmHA in order to provide it with the value as of the effective date of the plan of the allowed amount of its secured claim. Hearings on the foregoing matters will be scheduled as expeditiously as possible in order to finally resolve this case.

DONE AND ORDERED.