**In the Matter of Robert Lee STANLEY and Jackie Lynn Stanley, Debtors.**

**Bankruptcy No. 97–10279.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

April 2, 1997.

Eric A. Steiden, Cincinnati, OH, for Debtors.

Richard D. Bringardner, Columbus, OH, for Defendant.

## ORDER ON OBJECTION TO CONFIRMATION OF PLAN

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court upon an objection by Boston Acceptance Corporation, d.b.a. First Lenders Indemnity Company (First Lenders) (doc. 8), to confirmation of the Debtors' proposed plan. At a confirmation hearing held on March 18, 1997, counsel for First Lenders appeared telephonically and submitted a memorandum in support of its objection. (doc. 14) Counsel for the Debtors also appeared at the hearing as did the Chapter 13 Trustee. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### Factual Background and the Parties Contentions

On March 21, 1996, the Debtors obtained an $8,880.18 automobile loan on a 1991 Pontiac Grand Am. The loan was made at an interest rate of 21 percent and has since been assigned from the loan originator to First Lenders, the objecting creditor herein. Thereafter, on January 21, 1997, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code.

First Lenders objects to confirmation of the Debtors' plan on two grounds. First, that the proposed plan fails to provide First Lenders with "the market rate of interest as required for confirmation," and second, that the Debtors have failed to provide proof of insurance for the 1991 Pontiac Grand Am.[1] (Obj. to Confirmation, doc. 8, at 1–2.)

### The Interest Rate on the Secured Portion of an Allowed Claim

The Bankruptcy Code provides a debtor with potent options for the treatment of an undersecured consumer loan claim in a Chapter 13 plan. The total allowed claim of an undercreditor is divided into two parts—the allowed secured claim, which represents the present value of the collateral, and the allowed unsecured claim, which represents the remaining amount of the total claim which exceeds the present value of the collateral. To be eligible for confirmation a Chapter 13 plan must provide for the payment of interest on the secured portion of a claim from the effective date of the plan, so as to not dilute the present value of the claim during the term of the plan. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 429 (6th Cir.1982); 11 U.S.C. 1325(a)(5)(B)(i)–(ii). "In effect the law requires the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan." *Memphis Bank*, 692 F.2d at 429 (footnote omitted).[2] It is for the bankruptcy court to "[d]etermine the appropriate interest rate to be applied to the secured claim." 692 F.2d at 430.

The Debtors' Chapter 13 plan proposes to pay First Lenders a 9 percent interest rate on the secured portion of its claim and pay 100 percent of any unsecured portion at zero interest, over 54 months. The Debtor and the Chapter 13 Trustee contend that 9 per-

1. Regarding the lack of insurance, at the March 19, 1997 hearing this Court allowed the Debtor additional time to submit documentation that the 1991 Pontiac Grand Am was covered by an automobile insurance policy. On March 20, 1996, counsel for the Debtors faxed to this Court and to counsel for First Lenders a copy of an automobile insurance policy declaration which states that coverage is currently in effect on the 1991 Pontiac Grand Am. Neither First Lenders nor the Chapter 13 Trustee has raised any further objec-

tion regarding the adequacy of the Debtors' insurance coverage. This Court is satisfied that the Debtor currently maintains adequate insurance coverage on the automobile.

2. The requirement that a creditor "make a new loan for the value of the collateral," 692 F.2d at 429, is sometimes referred to as the "coerced loan" approach or theory. *In re Beare Company*, 177 B.R. 883, 885 (Bankr.W.D.Tenn.1994).

cent interest on the secured portion of First Lenders' claim represents the current market rate. First Lenders objects to the proposed 9 percent interest rate on the secured portion of its claim, arguing that it should receive the current market rate for an automobile loan made to a high risk borrower, which First Lenders contends should be 21 percent interest. (Obj. to Confirmation, doc. 8, at 2.) In support of its argument First Lenders relies primarily upon *Memphis Bank.*[3]

In *Memphis Bank* a debtor " 'puffed' her income somewhat on her loan application" in borrowing at 21 percent interest to purchase an automobile. The debtor did not make any payments on the loan and two months later filed bankruptcy under Chapter 13. 692 F.2d at 430. In her proposed plan the debtor sought to reduce the monthly payment amount on the loan and to extend the repayment time. *Id.* Although the written opinion of the Bankruptcy Court conflicted with its findings at the confirmation hearing, *id.*, "it is clear from the record that the Bankruptcy Court assessed the automobile payment plan in light of the debtor's pre-plan conduct in creating the debt." *Id.* at 431. The Bankruptcy Court reduced the interest rate from 21 percent to 10 Percent. *Id.*

On appeal the Sixth Circuit found the 10 percent interest rate set by the Bankruptcy Court to be "arbitrary" and held "that in the absence of special circumstances bankruptcy courts should use the current market rate of interest used for similar loans in the region." The current market rate is to be determined by the Bankruptcy Court "at the time the new loan is made." *Memphis Bank,* 692 F.2d at 431.

First Lenders argues that the "current market rate" and "similar loans" language of *Memphis Bank* should be interpreted to mean the market rate for automobile loans to high risk borrowers in this region. As such, First Lenders asserts that "the original 21% rate of interest does, in fact, represent the current market rate of interest for this lender. The market rate of 21% per annum must be paid to this lender." (Obj. to Confirmation, doc. 8, at 2.) *Memphis Bank* does not support such an interpretation.

*Memphis Bank* holds that *absent* "special circumstances bankruptcy courts should *use* the current market rate of interest used for similar loans in the region," 692 F.2d at 431 (footnote omitted, italics added), and further provides that this Court may adjust

> the market rate on the secured claim up or down ... when there is a substantial difference between the market rate and the rate the parties agreed on by contract. The Bankruptcy Court should have leeway to adjust the market rate on secured claims based upon special circumstances. But when the Bankruptcy Court deviates from the market rate, it should have good reasons for doing so, and it should explain these reasons.

692 F.2d at 431 n. 3. *Memphis Bank* instructs that this Court first determine the

---

**3.** First Lenders also cites to cases within the Sixth Circuit which apply *Memphis Bank.*

In re Colegrove, 771 F.2d 119 (6th Cir.1985) involved a Chapter 13 plan which did not pay interest on an arrearage owed to fully secured creditor. After determining that interest on the arrearage was required, *Colegrove* looked to *Memphis Bank* and held that "the most equitable rate to establish in this type of situation is the prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditors claim and the confirmation of the plan in bankruptcy with a *maximum limitation* on such rate to be the underlying contract rate of interest." 771 F.2d at 123.

In re Arnold, 878 F.2d 925 (6th Cir.1989) is a Chapter 12 case which noted the identical statutory language applicable to Chapter 12 and Chapter 13 plans. In *Arnold* the issue on appeal was whether the interest rate on an allowed secured claim should be "the current market rate, the contract rate, or the lesser of the two." 878 F.2d at 927. Upon stating that *"Memphis Bank* applies to situations like the present one," *id.* at 929–30, the Court in *Arnold* went on to hold that when "a creditor is forced to write-down a portion of its note, a creditor is entitled to receive its current market rate on the 'new loan.'" *Id.* at 930. In *Arnold* the Court distinguished *Memphis Bank* and *Colegrove,* agreeing that in *Memphis Bank* the creditor was forced by law to write-down the loan to current value, thus creating a new loan, while in *Colegrove* the creditor was fully secured and not required to accept unsecured status for any portion of its loan. *Id.* at 929.

Neither *Colegrove* nor *Arnold* alters *Memphis Bank.*

market rate and, if special circumstances exist, adjust up or down from the market rate when there is a substantial difference between the market rate and the contract rate, while clearly explaining the reasons for deviating from the market rate. Absent special circumstances the Court should not deviate from but rather should use the market rate.

Confining the inquiry to automobile loans made to high risk borrowers, as First Lenders argues, eliminates any substantial difference between market rates and contract rates. According to First Lenders the market rate and the contract rate are the same. Even in the presence of special circumstances such an interpretation eviscerates *Memphis Bank* and guarantees that First Lenders receive the contract rate. *Memphis Bank* does not support such a predetermined result. To the contrary, *Memphis Bank* suggests "full payment in accordance with the contract" as one way of dealing with a debtor whose conduct in obtaining a loan is at least questionable. 692 F.2d at 432. Furthermore, *Memphis Bank* "did not establish a *per se* rule" which requires "100% payment *any* time 'questionable pre-plan conduct exists.'" *In re Okoreeh–Baah*, 836 F.2d 1030, 1032, 1033 (6th Cir.1988). Based upon the record, this Court finds that the Debtors' conduct in obtaining the loan on the 1991 Pontiac Grand Am was not dishonest or questionable.

This Court, being "generally familiar with the current conventional rates on various types of consumer loans," 692 F.2d at 431, holds that 9 percent currently reflects the market rate for automobile loans in this region. Further, this Court finds no special circumstance exist for deviating from the current 9 percent market rate. The objection of First Lenders is overruled. The Debtors may submit an order confirming their proposed Chapter 13 plan.

**IT IS SO ORDERED.**