In re Sondi J. CARPENTER, Debtor.

FORD MOTOR CREDIT, Plaintiff,

v.

Sondi J. CARPENTER Defendant.

Bankruptcy No. 97–36162.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

May 22, 1998.

John A. Schuh, Cincinnati, OH, for Creditor.

Lester J. Thompson, Dayton, OH, for Debtor.

George W. Ledford, Chapter 13 Trustee, Englewood, OH.

## DECISION AND ORDER DENYING OBJECTION TO CONFIRMATION

WILLIAM A. CLARK, Chief Judge.

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U .S.C. § 157(b)(2)(L). The following Decision and Order constitutes the court's findings in accordance with Federal Rule of Bankruptcy Procedure 7052.

This matter came before the court upon Ford Motor Credit's Objection to Confirmation of Chapter 13 Plan [Doc. # 7–I] and Memorandum of Ford Credit in Support of Its Objection to Confirmation [Doc. # 11–I] pursuant to 11 U.S.C. § 506(b), the Chapter 13 Trustee's Memorandum Contra To Ford Motor Credit's Objection to Confirmation [Doc. # 16–I], Debtor's Motion Contra Ford Motor Credit's Objection to Confirmation [Doc. # 17–I], and the Reply Brief of Ford Credit in Support of Its Objection to Confirmation [Doc. # 18–I]. The court conducted a hearing on the matter on March 31, 1998 at 1:30 p.m. At the close of the that hearing, the court took the matter under advisement.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The facts presented in this case are not in dispute. Ford Motor Credit (hereinafter "Ford Credit") holds a lien on Debtor's 1994 Ford Mustang as security for the loan balance of $11,474.70. The fair market value of the automobile was stipulated by the parties to be $14,087.50. The court will accept the fair market value of the automobile as $14,087.50. Thus, Ford Credit is an oversecured creditor.

The contract rate of interest is 13.75%. Debtor proposes to pay post-confirmation interest at the current market rate of 8.47%. The issue is whether Ford Credit, as an oversecured creditor, is entitled to receive post-confirmation interest in the amount of the contract rate or conversely, whether Debtor is permitted under § 1325(a)(5)(B) to cramdown the contract rate and substitute a lower current market rate.

The Sixth Circuit has confronted the issue of what interest rate to apply to a reorganization plan post-confirmation on several occasions. Faced with fluctuating interest rates throughout the 1980s, the Sixth Circuit recognized the need to establish clear guidelines as to whether the contract rate or the current market rate is to be applied post-confirmation. *See United States v. Arnold*, 878 F.2d 925 (6th Cir.1989); *Cardinal Fed. Savs. & Loan Assoc. v. Colegrove*, 771 F.2d 119 (6th Cir.1985); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982).

■ . Pursuant to § 1325(a)(5)(B), a bankruptcy court is directed to "confirm a plan only where the creditor will receive the present value of the amount due him." *Colegrove*, 771 F.2d at 122. Because Ford Credit will receive the present value of its claim over an extended period of years, however, interest must be considered in order to put the Ford Credit in the position it would have been had the collateral been returned. *See Arnold*, 878 F.2d at 928.

■ Ford Credit is an oversecured creditor. Its status is important as the status will determine what rule of law the court will apply in assessing interest post-confirmation. When a creditor is undersecured, the market rate of interest should be used without limitation because courts do not want to further impair a creditor's claim. But when the creditor is fully secured, the market rate should be used to the extent that it does not exceed the contract rate. This lesser amount is appropriate because the creditor will receive the full value of the claim. *Arnold*, 878 F.2d at 929–30; *Colegrove*, 771 F.2d at 123; *In re Cameron*, 192 B.R. 880, 881 (Bankr.N.D.Ohio 1995).

Ford Credit relies on Justice O'Connor's dissent in *United States v. Ron Pair*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) as well as the Sixth Circuit's holding in *Memphis Bank* in contending the contract rate must be allowed. In one sense, Ford Credit's reliance is misguided. *Ron Pair* concerned granting post-petition interest to a non-consensual lien holder under § 506(b). Justice O'Connor took issue with the Court's decision to grant a non-consensual lien holder interest after a petition has been filed with a bankruptcy court. *Ron Pair*, at 249–254, 109 S.Ct. 1026. That case has no bearing as to the question of post-confirmation interest for a consensual lien holder. The question of whether Ford Credit can receive post-petition interest is moot. As an oversecured, consensual lien holder, Ford Credit can and will receive post-petition interest at the contract rate under § 506(b). The issue remains, however, whether Ford Credit is entitled to post-confirmation interest at the same rate or whether the Debtor may cramdown the contract provision pursuant to § 1325(a)(5)(B)(ii). Therefore, *Ron Pair* does not advance Ford Credit's cause.

Second, the facts in this case are not consistent with those in *Memphis Bank* and therefore that case is distinguishable from the one at bar. In *Memphis Bank*, the Sixth Circuit examined the rights of an undersecured lender and its ability to receive post-confirmation interest at the market rate. In addressing the issue, the Sixth Circuit held that "in the absence of special circumstances, bankruptcy courts should apply the current market rate of interest used for similar loans in the region." *Id.* at 431. The court's reasoning for applying a higher market rate of interest was based on the theory that the lender was making a "new loan." *Id. But see United Carolina Bank v. Hall*, 993 F.2d 1126 (4th Cir.1993) (holding where current market rate exceeded the contract rate, the court will apply the contract rate for creditor's undersecured claim.). Hence, in *Memphis Bank* the Sixth Circuit viewed the 'cramdown' provision of section 1325(a)(5)(B) as forcing the creditor to make a new loan in the amount of the current value of the collateral. *See Arnold*, 878 F.2d at 928. As this court stated, Ford Credit is an oversecured creditor and therefore it will receive dollar for dollar the value of its claim on the date of confirmation.

In *Colegrove,* the Sixth Circuit held that the "most equitable rate to establish in this type of situation is the prevailing market rate of interest on similar types of secured loans at the time of allowance of the creditors [sic] claim and the confirmation of the plan in bankruptcy with a *maximum limitation* on such rate to be the underlying contract rate of interest." *Colegrove,* 771 F.2d at 123 (distinguishing its earlier holding in *Memphis Bank* ) (emphasis added). It is important to note that when *Colegrove* was decided, the current market rate for similar loans exceeded the contract rate. In the words of one court, "*Colegrove* only creates a very narrow exception to the general rule contained in *Memphis Bank; Colegrove's* holding must be strictly limited to its particular facts which involve a debtor's cure of a fully secured creditor's mortgage arrearages under a Chapter 13 plan." *In re Kain* 86 B.R. 506, 519 (Bankr.W.D.Mich.1988). The Sixth Circuit reaffirmed the bankruptcy court's reasoning in *Kain* when it delivered its decision in *United States v. Arnold,* 878 F.2d 925 (6th Cir.1989). Addressing the legal significance of *Memphis Bank* and *Colegrove,* the Sixth Circuit noted:

> The creditor in *Colegrove* was completely secured and was not required to accept unsecured status as to any portion of its debt. In *Memphis Bank,* however, the creditor was forced by operation of law to write-down the current value of the loan, thus ... creating a new loan to which creditor was entitled to interest at the current market rate, even if the current market exceeded the contract rate.

*Arnold,* 878 F.2d at 929 (emphasis added). Thus in *Arnold,* the Sixth Circuit makes the clear proposition that an oversecured creditor is limited to the contract rate of interest when the current market rate of interest is higher than the contract rate.

Finally, Ford Credit makes the sweeping assertion that Congress never intended § 506(b) to prevent an oversecured creditor from receiving the contract rate of interest post-confirmation. To the contrary, bankruptcy authorities are clear that "Congress specifically considered an amendment requiring the contract rate to be paid under section 1325(a)(5)(B)(ii) and rejected it." 8 COLLIER

ON BANKRUPTCY § 1325.06[3][b][iii][B] (15th ed. rev.1997). Were Ford Credit an undersecured creditor then *Memphis Bank* would require the court to use the current market rate for similar loans in the region. However, because Ford Credit is oversecured, as was the lender in *Colegrove, Colegrove* provides the rule of law. *See Key Bank v. Harko (In re Harko* ), 211 B.R. 116 (2nd Cir. BAP 1997); *In re Stanley,* 216 B.R. 929 (Bankr.S.D.Ohio 1997); *In re Cameron,* 192 B.R. 880 (Bankr.N.D.Ohio 1995); *Warehouse Home Furnishings Distribs. v. Gladdin (In re Gladdin),* 107 B.R. 803, 806 (Bankr.M.D.Ga.1989); *In re Arlington Village Partners, Ltd.,* 66 B.R. 308 (Bankr. S.D.Ohio 1986); *In re LaLonde,* 65 B.R. 237 (Bankr.S.D.Ohio 1986). Therefore, the appropriate rate of interest shall either be the current market rate used for similar loans in the region or the contract rate of 13.75%, which ever is less.

### CONCLUSION

For the reasons stated above, it is the court's holding that Ford Motor Credit's Objection to Confirmation [Doc. # 16–1] should be, and hereby is, DENIED and the Debtor's plan is CONFIRMED.

It is so ORDERED.