**In re Ronald J. TURNER, Donna I. Turner, Debtor(s).**

**Bankruptcy No. 2–87–05782.**

United States Bankruptcy Court, S.D. Ohio, E.D.

June 9, 1988.

Pamela N. Maggied, Columbus, Ohio, for debtors.

Janice M. Bernard, Squire, Sanders & Dempsey, Columbus, Ohio, for Aetna Life Ins. Co.

Frank M. Pees, Worthington, Ohio, Chapter 12 Trustee.

## OPINION AND ORDER ON OBJECTIONS TO CONFIRMATION AND MOTION TO DISMISS

DONALD E. CALHOUN, Jr.,
Bankruptcy Judge.

This matter is before the Court following a hearing held June 7, 1988 on the confirmation of the debtors' Chapter 12 plan of reorganization. Aetna Life Insurance Company ("Aetna") filed objections to the confirmation of the debtors' plan, and also filed a motion to dismiss this matter on the basis of its objections.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(L). The following opinion and order constitutes findings of fact and conclusions of law.

Aetna has raised four objections to the confirmation of the debtors' proposed plan of reorganization. First, Aetna contends that the debtors are not persons eligible to file a Chapter 12 proceeding because they are unable to demonstrate that they earn sufficiently stable and regular annual income so as to enable them to make the payments required under their plan. 11 U.S.C. § 101(18) and § 109(f). Aetna also contends that the debtors do not qualify under the Bankruptcy Code as family farmers because prior to filing this petition they caused to be formed the Double R & D Acres, Inc. ("the corporation") for the purpose of managing their farming operations, thus rendering the debtors ineligible by statutory definition to be family farmers. Aetna also argues that the formation by the debtors of the corporation in December of 1986, followed by their filing of this petition under Chapter 12 in December of 1987, was a purposeful design by the debtors to frustrate and evade their creditors.

As such, Aetna contends that the debtors' plan has not been proposed in good faith.

Aetna's second objection concerns the valuation of farmland on which they hold a first mortgage. Aetna disputes the valuation of that farmland by the debtors of $805.00 per acre, and contends that the farmland should be valued using a basis of $915.00 per acre.

Aetna's third objection relates to the interest rate the debtors propose to pay on their indebtedness. The debtors contend that the interest rate should be the contract rate established by the mortgage, whereas Aetna argues that the interest rate should be the market rate of interest for new loans presently available to farmers.

Aetna's fourth objection relates to the feasibility of the proposed plan of reorganization. As to this objection, Aetna contends that the debtors cannot demonstrate that they earn sufficient income to meet their projected expenses.

The Court will now consider each of the objections raised by Aetna to the debtors' proposed plan of reorganization in light of the evidence proffered at the hearing on this matter and the record in this case.

## I. ELIGIBILITY FOR RELIEF, GOOD FAITH AND FEASIBILITY

As to Aetna's objection that the debtors are ineligible for relief under Chapter 12 of the Bankruptcy Code, that their plan was not filed in good faith, and that their plan is not feasible, the Court finds the following facts significant to its resolution of these issues.

Debtor Ronald Turner ("Mr. Turner") testified that he is engaged in the occupation of farming; that he also maintains the books and records for the corporation in the farming operation; that 50% or more of his gross income for the taxable year preceding the taxable year in which his case was filed is derived from farming operations; that his personal debt does not exceed $1.5 million dollars; and that 80% of his current debt has arisen from his farming operations. He also testified that his plan was filed in good faith; that creditors

under the proposed plan will receive more than from a liquidation; and there will be sufficient income to meet projected expenses. He further testified that he originally formed the corporation so that he could continue hog-farming operations. The existence of the corporation, however, enabled him to borrow money so that he could plant crops, with the lender retaining a security interest in those crops. Mr. Turner also stated that he is the president of the corporation, with Charles Ewing, Esquire, being the principal shareholder. The purpose of this arrangement, Mr. Turner testified, was to permit Mr. Ewing to hold the shares of the corporation as Trustee for the debtors' children. Mr. Turner said that the corporation, under the terms of the proposed plan of reorganization, is to be dissolved, or its operations turned over to the Chapter 12 Trustee.

Mr. Turner further testified that subsequent to the formation of the corporation, he fell behind on his mortgage payments to Aetna, attempted to negotiate with Aetna for repayment of the arrearage, and when unable to do so, consulted with Mr. Ewing in November of 1987 about the prospects of filing for relief under Chapter 12. Mr. Turner testified that he was advised that a petition for relief under Chapter 12 would be filed around mid-November of 1987, and when that event did not occur, then he and his wife retained the services of their present counsel. Thereafter, the debtors filed for relief under Chapter 12 on or about December 30, 1987.

Debtor Donna Turner ("Mrs. Turner") testified that she is employed off the farm as a legal secretary but also assists Mr. Turner in work on the farm. She testified that the present Chapter 12 petition has been filed in good faith; that creditors would not receive more from a liquidation than under the proposed plan; and that the payments required under the proposed plan can be made.

■ On the basis of the debtors' testimony, as well as a complete review of the record and exhibits in this case, the Court is of the opinion that the debtors qualify as family farmers under the Bankruptcy Code, and that their proposed plan of reorganization has been filed in good faith. The Court finds that the corporation in this case did not own, nor does it now own, the principal assets of the debtors' estate. Therefore, the Court finds that the assets that would be administered through the debtors' proposed plan are those of the debtors and not of the corporation. The basis of this finding rests in the Court's recognition that more than 50% of the outstanding stock *or equity* of the corporation is held by the debtors. Mr. Ewing's capacity is that of a trustee, who holds the shares of the corporation in trust for the debtors' children. The children have an equitable interest in that stock as intended beneficiaries of the trust. Likewise, the debtors, as officers and directors of the corporation, have an equitable interest in the corporation. Accordingly, under 11 U.S.C. § 101(17)(B) the debtors are eligible for relief under Chapter 12, Title 11 of the United States Code.

■ Moreover on a complete review of the evidence, the Court is unable to find that the debtors' proposed plan of reorganization was not filed in good faith. The Court finds that the debtors formed the corporation as a means for continuing their farming operations, and when this method failed, their only resort was to file for relief under Chapter 12. The evidence presented in this matter does not, in the Court's opinion, demonstrate that Aetna was substantially prejudiced by the debtors' actions, and therefore this Court cannot conclude that the debtors' proposed plan of reorganization was not filed in good faith.

■ The Court also finds that the debtors' income is sufficiently stable and regular to fund their proposed plan of reorganization. The Court finds that the debtors' projection for income from its farming operations to be a fair approximation and sufficient to meet projected expenses. Moreover, the Court notes that both Mr. and Mrs. Turner have sufficiently stable and regular non-farm income, which income can be used in funding their proposed plan of reorganization. *In re Mikkelsen*

*Farms, Inc.,* 74 B.R. 280 (Bankr.D.Or. 1987); *In re Guinnane,* 73 B.R. 129 (Bankr.D.Mont.1987); *In re Rott,* 73 B.R. 366 (Bankr.D.N.D.1987). Moreover, the Court cannot conclude that the debtors would not realize any income from the dissolution of the corporation, or, alternatively, its continued operation by the Chapter 12 trustee during the pendency of this bankruptcy.

Lastly, the Court is unable to find that the evidence conclusively establishes that the debtors' projections of their harvest, and the income to be realized from that harvest, are unrealistic or unattainable. The Court recognizes that farming is a highly volatile industry, as is, too, the commodities market. The debtors have a difficult burden of estimating their harvest, and income from that harvest, in a dynamic and uncertain environment. The Court is unable to find that the debtors' estimations, given this environment, are unrealistic or unattainable.

In summary, the Court finds that the debtors are eligible for relief under Chapter 12, that their plan has been proposed in good faith, and that the proposed plan is feasible. Accordingly, the objections of Aetna, as to these issues, are OVERRULED.

## II. VALUATION OF FARMLAND

Aetna objects to the debtors' valuation of the farmland on which Aetna holds a first mortgage. Both the debtors and Aetna presented expert testimony by appraisals as to the value of the real property in question. Both appraisers included in their estimate the value of the land only, excluding the debtors' house and/or other buildings. Aetna's appraiser valued the debtors' land at $375,000.00 which after adjustments was expressed as $915.00 per acre. The debtors' appraiser valued the debtors' land at $327,776.00 which after adjustments was expressed as $805.00. This Court finds, upon complete review of the testimony, the record in this case, and the appraisal reports submitted, that the value of the debtors' land is $346,500.00 which is

approximately $850.00 per acre to use the parties frame of reference.

## III. INTEREST RATE

The debtors contend that Aetna is entitled to the market rate of interest, but only if that market rate does not exceed the underlying contract rate. In other words, the debtors contend that the underlying contract rate is the maximum rate that can be charged. In support of this position, debtors rely on the cases of *Memphis Bank & Trust Company v. Whitman,* 692 F.2d 427 (6th Cir.1982) and *Cardinal Federal Savings & Loan Assoc. v. Colegrove (In re Colegrove ),* 771 F.2d 119 (6th Cir.1985). *Memphis Bank & Trust* and *Colegrove* were decisions involving the rate of interest to be allowed in cases filed under Chapter 13 of the Bankruptcy Code. The debtors posit that inasmuch as the Chapter 12 legislation was modeled after the Chapter 13 statute, that the reasoning in *Memphis Bank & Trust* and *Colegrove* on the issue of interest rates should apply equally in Chapter 12 cases.

Aetna does not dispute debtors' position that the Chapter 12 legislation was modeled after the Chapter 13 statute but states that the facts in the instant case are distinguishable from those that faced the Court in the *Colegrove* case. In *Colegrove,* Aetna notes as a distinguishing fact that there the creditor was fully secured, not partially secured as in the instant case.

The Court is unable to find that the court in *Colegrove,* in reaching its decision as to an appropriate rate of interest, gave any consideration as to whether the creditors were partially or fully secured, or as to the nature and type of the collateral. Moreover, this Court is of the opinion that a market rate of interest in a situation as one presently before the Court is a fiction. There is no evidence of a market rate of interest for 100% financing on a new loan on farm property or for refinancing a loan in default. However speculative the market rate of interest may be, in this case the evidence would suggest that it exceeds the contract rate. *Colegrove* provides that a market rate should apply if it is lower than

the contract rate; otherwise that contract rate constitutes a maximum rate to be applied in reorganization cases. Accordingly, it is the conclusion of this Court that the contract rate of interest of 9¼% per annum is to apply in this case. The contract default rate of 13¼% is not considered because we interpret the case law cited above as viewing the allowance of interest on the secured and unsecured arrearages as curing the default for purposes of the Bankruptcy Code.

## IV. CONCLUSION

Overlying the Court's consideration of all the issues in this case is that Congress enacted the Chapter 12 family farmer legislation to meet what they deemed to be an exceptional need. When this Court is called upon to exercise judgment within certain parameters, it should be cognizant of that Congressional intent.

On the basis of the foregoing findings of fact and conclusions of law, it is the opinion of this Court that the debtors are eligible for relief under Chapter 12 of the Bankruptcy Code; that their proposed plan has been filed in good faith; and that the proposed plan is feasible. The Court finds that the farmland in question has a value of $346,500.00. The Court further finds that the appropriate rate of interest to be used in this case is the rate of 9¼% per annum. Accordingly, the objections of Aetna are OVERRULED and its motion to dismiss DENIED.

The Court hereby grants the debtors twenty (20) days from the entry date of this order in which to amend their proposed plan of reorganization, and to file that plan with the Court. The Court will reserve confirming the plan pending review by the Chapter 12 trustee and his submission of revised recommendations.

IT IS SO ORDERED.