**In re MCSWINE CREEK FARMS, INC.**

**No. 99–34619.**

United States Bankruptcy Court, N.D. Mississippi.

Aug. 30, 2000.

Glenn H. Williams, Cleveland, MS, for Debtor.

Harold J. Barkley, Jr., Jackson, MS, trustee.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are the following:

1. Motion to dismiss filed by the Chapter 12 trustee asserting that the debtor, McSwine Creek Farms, Inc., is not eligible for Chapter 12 relief pursuant to 11 U.S.C. § 101(18) and (19).

2. Motion to dismiss for failure to qualify as a Chapter 12 debtor filed by the United States of America—Farm Service Agency (FSA).

3. Objection to the confirmation of the debtor's Chapter 12 plan filed by FSA.

4. Motion, filed by FSA, to declare that the automatic stay is not in effect or, alternatively, to lift the automatic stay and abandon real property and farm equipment.

Responses to each of the aforesaid pleadings were filed by the debtor; and the court, having heard and considered same, hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the parties to and the subject matter of these proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), (G), (L), and (O).

## II.

### MOTIONS TO DISMISS

The Chapter 12 trustee and FSA have premised their motions to dismiss on the argument that the debtor is ineligible for Chapter 12 bankruptcy relief pursuant to the definitions set forth in 11 U.S.C. § 101(18)(B) and (19), which read as follows:

(18) "family farmer" means—

(B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and then relatives of the members of such family, and such family or such relatives conduct the farming operation, and

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt

arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded;

(19) "family farmer with regular annual income" means family farmer whose annual income is sufficiently stable and regular to engage such family farmer to make payments under a plan under chapter 12 of this title.

Cloy M. Case (Case), the president and sole stockholder of the debtor, originally incurred several debts with FSA beginning as early as April 18, 1979, with the execution of a promissory note in the sum of $165,000.00, bearing interest at the rate 8 1/2% per annum. This was followed by the execution of a second promissory note on April 3, 1981, in the principal sum of $37,760.00, bearing interest at the rate of 5% per annum. The evidence indicates these notes were collateralized by real property and farm equipment, the liens of which were perfected by appropriately recorded deeds of trust and financing. statements. One or both of these notes were renewed on several occasions, the last instrument being dated April 11, 1985. As of November 1, 1999, the total debt owed to FSA had risen to the sum of $661,190.26. The respective promissory notes, their principal amounts, annual rates of interest, and due dates of their final installments are set forth as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 4/18/79 | $165,000.00 | 8.50% | 4/18/2004 |
| 4/3/81 | 37,760.00 | 5.00% | 4/3/2000 |
| 4/20/82 | 8,000.00 | 14.25% | 4/20/83 |
| 5/4/83 | 53,700.00 | 10.25% | 5/4/84 |
| 3/5/84 | 67,500.00 | 7.25% | 3/5/85 |
| 5/2/84 | 12,030.00 | 7.25% | 5/2/85 |
| 4/11/85 | 85,670.00 | 7.25% | 4/11/86 |

The deeds of trust encumber 412.2 acres of real property, formerly owned by Case, which FSA previously valued at $354,500.00. The debts were also secured by certain items of farm equipment, valued by FSA in the sum of $3,450.00.

Because of a moratorium, prohibiting foreclosures by FSA and its predecessor in interest, Farmers Home Administration, as well as, because of an intervening individual bankruptcy petition filed by Case and his wife, Linda Joyce Case, No. 89–12398, FSA has made little effort to enforce its security interests over the past several years.

As alleged in FSA's pleadings, Case applied to FSA for permission to sell the subject real property in July, 1998. The application was conditionally approved subject to the buyer paying the fair market value of the property in the sum of $354,500.00, plus $94,894.00, representing the value of gravel and timber allegedly sold by Case without FSA's permission. This condition could not be met so the application was denied on July 24, 1998.

In July, 1999, FSA gave notice to Case of its intent to foreclose its deeds of trust. Case then incorporated the debtor, McSwine Creek Farms, Inc., and trans-

ferred title to the real property to the corporation on August 20, 1999, by an Assumption Quitclaim Deed. The consideration for this transfer was the assumption by the corporation of all debts owed to FSA to the extent of the fair market value of the real property.

Case indicated that he transferred his cattle, certain farm equipment, and an eighteen-wheeler dump truck with trailer to the debtor in exchange for the execution of a promissory note in the principal sum of $20,000.00.

Shortly after its incorporation, the debtor filed a corporate Chapter 12 bankruptcy petition on October 7, 1999. The debtor filed a plan of reorganization proposing to pay FSA as follows:

Class III(a)—$165,000.00 shall be paid in 40 equal amortized installments at the rate of 8.5% per annum, which shall begin on February 15, 2001, with a like amount due on the same day of each succeeding year with the final payment being due on February 15, 2040.

Class III(b)—$35,000.00 shall be paid in a single balloon payment to come due in 10 years plus interest accrued at the rate of 5% per annum. The proceeds of any timber sales by the debtor prior to the maturity of this claim shall be applied to the balance of principal and interest. (In another section of the plan, this number is expressed as $37,760.00.)

The aforesaid amounts to be paid to FSA are based on the promissory note dated April 18, 1979, in the principal sum of $165,000.00, and the promissory note dated April 3, 1981, in the principal sum of $37,760.00. The total of these two notes roughly coincides with the value placed on the real property by the debtor in the sum of $200,000.00. Although it is not clear, depending on whether the debtor proposes to pay FSA $35,000.00 or $37,760.00, the slight overage could be attributable to a value assigned by the debtor to the farm equipment which is subject to FSA's lien.

The debtor indicates that it proposes to fund its plan of reorganization as follows:

1. CRP (Conservation Reserve Program) Payment—$7,961.00 per year. (The parties concur that this payment will last only through 2007.)

2. Crop program payments—The debtor projects that it will receive approximately $2,000.00 per year from the United States Department of Agriculture. FSA notes that these payments will last only through 2002, and that they will decline annually from the present date until that time.

3. Cattle operation—The debtor anticipates that it will earn approximately $2,000.00 to $3,000.00 per year from the sale of cattle.

4. House rent—The debtor will receive an estimated $700.00 per month or $8,400.00 per year from Case, individually, as rent for the residential dwelling that he occupies on the subject real property.

5. Timber proceeds—The aforesaid plan payments will be augmented by the proceeds from the sale of timber which is currently growing on the real property. The projected amounts to be realized from the timber sales were not calculated, but the hardwood timber was expected to be harvested in five years and the pine timber in ten years.

While the Chapter 12 trustee's motion to dismiss is fairly generic, FSA's motion focuses more closely on the requirement that "not less than 80% of its (the debtor's) aggregate non-contingent liquidated debts . . . . arise out of the farming operation owned or operated by such corporation . . . ." FSA also asserts that the debtor

has not filed its bankruptcy case in good faith.

■ Although Case has been involved with FSA for over twenty years, he has not been engaged in actual farming activities for the past several years. As such, he would not qualify individually as a "family farmer" because 50% or more of his income in calendar year 1998 was not generated from farming activities. This requirement, however, does not apply to a corporation. *See, In re Cross Timbers Ranch, Inc.*, 151 B.R. 923 (Bankr.W.D.Mo. 1993). Case obviously recognized this disparity between a corporate and an individual Chapter 12 debtor, insofar as eligibility was concerned, and thus elected to incorporate before filing bankruptcy. This is not inherently wrong. In the absence of further substantiating evidence, this court cannot presumptively conclude that the actions of Case were in bad faith. *See, In re Turner*, 87 B.R. 514 (Bankr.S.D.Ohio 1988) and *In re KZK Livestock, Inc.*, 147 B.R. 452 (Bankr.C.D.Ill.1992). Since the debtor herein has timely filed schedules and a proposed Chapter 12 plan of reorganization, this court also finds that the factual circumstances in *In re S Farms One, Inc.*, 73 B.R. 103 (Bankr.D.Colo.1987), relied upon by FSA, are distinguishable.

■ The most significant question is 80% of the aggregate non-contingent, liquidated debt owed by McSwine Creek Farms, Inc., arises out of the farming operation owned or operated by the debtor corporation. Clearly, if the corporate debtor could assume the indebtedness owed to FSA, this requirement would be met. The $20,000.00 debt owed by the debtor to Case, generated through the purchase of his cattle, farm equipment, and dump truck, is meaningless. The true test is whether the debt owed to FSA is legitimately owed by McSwine Creek Farms, Inc.

Paragraph No. 12 of the FSA deeds of trust provides as follows:

(12) Neither the property or any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. . . .

Conditions such as this are authorized pursuant to regulations codified at 7 CFR 1943.12(b)(4)(iii), 1943.12(b)(10), and 1965.27.

Case obviously knew that FSA's consent was required since he made application to FSA for permission to sell his property earlier. The court must, therefore, conclude that this "restriction on transfer" is fatal to the effort of the corporate debtor to include the debt owed to FSA in its Chapter 12 bankruptcy. The court is aware of no authority that would permit the debtor to circumvent the clear and unambiguous provisions set forth in the deeds of trust. Consequently, the debt to FSA is not owed by the corporate debtor. Likewise, the underlying collateral, securing the debt to FSA, can not be includible in this bankruptcy estate.

III.

*OBJECTION TO CONFIRMATION FILED BY FSA*

■ For the reasons set forth immediately hereinabove, the court has determined that the debt is not owed to FSA by McSwine Creek Farms, Inc., and the property securing the debt should not be considered a part of this bankruptcy estate. As such, even without further discussion, the objection to confirmation is well taken. However, the court is compelled to comment on the following issues which also are pertinent to the debtor's proposed plan of reorganization, to-wit:

1. Both the debtor and FSA offered appraisal testimony concerning the subject real property by individuals who were appropriately qualified as expert witnesses. The debtor's appraiser, Brewer Appraisal Service, indicated that the property had a value of $200,000.00, representing approximately $485.00 per acre for the 412.2 acre tract. FSA's appraiser, Thomas A. Kennard and Associates, valued the same property at $395,424.00, at a rate of $960.00 per acre. In their market data approaches to valuation, both appraisers utilized comparable sales adjusted to account for differences, either better or worse, in the subject real property. The sizeable disparity in the appraisals can be attributed primarily to the value assigned by the FSA appraiser to timber that might be merchantable at some future date. This added value was not included by the debtor's appraiser who looked only to comparable sales, some of which also had growing timber.

Although the court is of the opinion that the methodology utilized by FSA's appraiser resulted in a somewhat artificially high evaluation, the debtor's appraiser did not take into account that the value of the property could perhaps be enhanced independently because of the merchantable timber. It would appear that the debtor's participation in the CRP pine forestation program could have a positive influence on the land value as compared to purely unmanaged timber growth. On the other hand, the court is cognizant of the fact that there is no absolute certainty that timber growing now will be harvested at some indefinite future date for a significant value. Obviously, there are many unfortunate things that can happen to standing timber over the next five to ten years. Regardless, the court is of the opinion that a mid-range value for this property, in the vicinity of $280,000.00, would be appropriate. Based on calculations provided by Sidney Owen, Jr., an FSA loan specialist, the amortization of this amount would require an annual payment of at least $24,000.00, payable over 40 years at 8 1/2% per annum. The debtor's income projections, after being adjusted for the ultimate termination of the CRP payment, as well as, the termination and reduction of the crop program payments, would not service this debt over the foreseeable future.

2. There is no showing in the debtor's plan, that is discernable to the court, of any repayment proposal for the farm equipment which is subject to the FSA lien, nor is there any showing that the $20,000.00 debt, owed to Case, can be serviced.

For these additional reasons, the court concludes that the debtor's plan of reorganization is not feasible, and the objection to confirmation, filed by FSA, shall be sustained.

## IV.

*MOTION TO DECLARE THE AUTOMATIC STAY NOT TO BE IN EFFECT, OR, ALTERNATIVELY, TO LIFT THE AUTOMATIC STAY AND ABANDON THE REAL PROPERTY AND FARM EQUIPMENT*

In the bankruptcy case of Case and his wife, Linda Joyce Case, mentioned hereinabove, an order lifting the automatic stay and abandoning the property collateralized to FSA was entered on February 2, 1990. Ostensibly, because of the moratorium, no action was taken by FSA until it submitted its notice of intent to foreclose in July, 1999. Because the court has already concluded that the real property could not be transferred from Case to the corporate debtor, it is not property of this bankruptcy estate. Consequently, the automatic

stay must be lifted and the property abandoned as it was once done in 1990.

Short of an agreement being negotiated between Case, the debtor, and FSA, the court has no discretion to mandate that FSA accept the debtor as the owner of the subject real property. This would contravene the express provisions of the FSA deeds of trust, as well as, the aforementioned sections of the Code of Federal Regulations.

An order will be entered consistent with this opinion.